744 So.2d 23 (1998)
Irma SMITH and Irian Layton Smith
v.
DAVILL PETROLEUM COMPANY, INC. d/b/a Piggly Wiggly.
No. 97 CA 1596.
Court of Appeal of Louisiana, First Circuit.
December 9, 1998.
*25 Marlise O. Harrell, Hammond, Hobart Pardue, Springfield, Counsel for Appellants Irma Smith and Irian Layton Smith.
Morgan J. Wells, Jr., Stephen M. Larzelere, Metairie, Counsel for Defendants-Appellees T.H. Davidge Co., Inc. and Ranger Insurance Company.
Before: GONZALES, KUHN, GUIDRY, WEIMER, and CHIASSON, JJ.
WEIMER, J.
This is an appeal from a trial court judgment in a personal injury action for damages.

FACTS AND PROCEDURAL HISTORY
On March 14, 1993, plaintiff, Irma Smith, was injured after she fell in the parking lot of a Piggly Wiggly grocery store. Mrs. Smith testified at trial that as she was exiting the store and returning to her vehicle, her attention was diverted by another vehicle pulling into the parking lot. She could not definitely testify as to what caused her to fall, but did indicate that she observed a hole in the area where she had fallen. An eyewitness to the accident testified that there was a "sink hole" in the particular place where plaintiff had fallen. Mrs. Smith further testified that she was aware of the condition of the parking lot prior to this accident as she had successfully negotiated the parking lot going into the store.
Mrs. Smith and her husband, Irian Layton Smith, filed a petition for damages on *26 January 10, 1994, naming as defendants Davill Petroleum Company, Inc., d/b/a Piggly Wiggly and Ranger Insurance Company, which had issued a policy of premises liability insurance to the owner of the Piggly Wiggly.[1]
The matter proceeded to a trial by jury, which was asked to return a special verdict. According to the jury interrogatories, the jury found the condition of the parking lot to be defective and the cause of Mrs. Smith's fall. However, the jury found that Mrs. Smith was guilty of comparative fault, assessing her with 49% of the fault and defendants with 51% of the fault. Furthermore, the jury found that Mrs. Smith had sustained a new injury to her elbow and an aggravation of a preexisting condition of her knee. The jury found that she had not sustained other claimed injuries, including an alleged injury to her shoulder, as a result of this accident. Mrs. Smith was awarded a total of $6,000.00 in general damages, $4,000.00 for past medical expenses, and $2,000.00 for future medical expenses. The jury rejected a claim by Mr. Smith for loss of consortium.
The trial court signed a judgment, in accordance with the jury's verdict, in favor of Mrs. Smith in the amount of $6,120.00 ($12,000.00 less 49% for her comparative fault). Additionally, the judgment assessed all costs against defendants. Subsequently, Mrs. Smith filed a "Motion For Judgment Notwithstanding The Verdict Or Alternatively, Motion For A New Trial Or Additur And Rule To Tax Costs," contending that the jury verdict was one which reasonable people could not have reached, particularly, the allocation of fault and the inadequate damage awards. The trial court partially granted the motion for judgment notwithstanding the verdict (JNOV), increasing the general damage award from $6,000.00 to $25,000.00 and awarding $2,500.00 to Mr. Smith for loss of consortium. These awards were reduced by the percentage of fault attributable to Mrs. Smith as found by the jury. Thus, judgment was rendered on October 10, 1996, in favor of Mrs. Smith in the amount of $15,810.00 and in favor of Mr. Smith in the amount of $1,275.00. The trial court further ordered that expert fees were to be included in the court costs which were to be borne solely by the defendants.
The plaintiffs have appealed this judgment[2] asserting six assignments of error. The defendants answered the appeal, contending that the jury's verdict should be reinstated and that the court costs and the costs of the experts' witness fees should be assessed proportionately against the parties in accordance with their percentages of fault.

JUDGMENT NOTWITHSTANDING THE VERDICT
In Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 832 (La.1991), the Louisiana Supreme Court reiterated the criteria first set forth in Scott v. Hospital Service District No. 1, 496 So.2d 270 (La. 1986), to be used in determining whether a JNOV has been properly granted pursuant to LSA-C.C.P. art. 1811:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. *27 The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated.[3] (Citation omitted.)
A JNOV may be granted on the issue of liability, damages or both. LSA-C.C.P. art. 1811(F). In general, the standard of review of a JNOV on appeal is twofold. First, we must determine whether the jury verdict is supported by competent evidence and is not wholly unreasonable. To make this determination, we must, after considering all of the evidence in the light most favorable to the party opposing the motion, find that it points so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict on the issue. Daigle v. United States Fidelity and Guaranty Insurance Company, 94-0304, p. 7 (La.App. 1 Cir. 5/5/95), 655 So.2d 431, 436. Second, after determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review. Id.
Likewise, when a trial court grants a JNOV as to quantum, both the decision to grant the JNOV (i.e. that facts and inferences point so strongly and over-whelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict) and the resulting increase or decrease in the award must be reviewed. Higley v. Kramer, 581 So.2d 273, 276-78 (La.App. 1 Cir.), writ denied, 583 So.2d 483 (1991). Once we have established that the trial court correctly applied its standard of review in setting aside the jury's damage award, we in turn review the trial court award under the manifest error standard of review. If there is manifest error in the trial court award, the jury's damage award should be reinstated. If the award is not manifestly erroneous, then the trial court damage award based on its independent assessment of the damages is reviewed on appeal under the constraints of Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), i.e., the abuse of discretion standard of review. Daigle, 94-0304 at p. 7, 655 So.2d at 436.
The abuse of discretion standard of review requires an inquiry as to whether the award for the particular injuries and their effects on the particular plaintiff under the particular circumstances is a clear abuse of the much discretion of the trier of fact. Only after such a determination of an abuse of discretion is made, should we *28 resort to prior awards for the purpose of determining the highest or lowest point which is reasonably within that discretion. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).

ALLOCATION OF FAULT
The plaintiffs assign as error the trial court's denial of a JNOV on the allocation of fault issue. Plaintiffs argue that Mrs. Smith should have been found totally free from fault in causing the accident. In determining whether the motion for JNOV as to the allocation of fault was properly denied, we must determine if the jury verdict was supported by competent evidence and was not wholly unreasonable. If we find the jury's verdict was such that the facts and inferences point so strongly and overwhelmingly in favor of the non-moving party that reasonable persons could not arrive at a contrary verdict, then the trial court was correct in denying the JNOV on the issue of the allocation of fault.
There is evidence in the record to indicate that the parking lot in question was riddled with uneven concrete and holes. However, as previously indicated, Mrs. Smith testified that she was aware of the condition of the parking lot prior to the accident. On entering the store, Mrs. Smith had walked in the same general area as where the accident occurred. As she was exiting the store and returning to her vehicle, her attention was diverted by a truck pulling into the parking lot. Mrs. Smith stated that as she was moving over to get out of the truck's way, her "foot caught on something" and she fell.
Based on the evidence in the record, we are satisfied that the trial court was correct in denying the JNOV as to the allocation of fault. We find when all factual questions and reasonable inferences are resolved in favor of defendant, reasonable jurors could have reached the conclusion that Mrs. Smith was 49% at fault in causing the accident in question. Thus, this assignment of error is without merit.

ADEQUACY OF DAMAGES

General Damages
The jury's original general damage award of $6,000.00 was increased to $25,000.00 by the trial court. In written reasons for granting the JNOV, the trial court stated:
Given these factors, the Court concludes that the uncontroverted evidence indicated that Plaintiff had some knee complaints for some six to ten months, and continues to experience problems with her elbow. The issue, then, becomes whether reasonable persons could not conclude that $6,000.00 in general damages was adequate compensation for such injuries. This Court cannot conclude that such an award is reasonable, given the fact that the elbow complaints persist some three and one half years subsequent to the accident.
Following a review of the record in this case and the trial court's Reasons for Judgment, it is clear that the trial court incorrectly applied the standard of review in granting the JNOV as to the jury's general damage award. As previously indicated, a JNOV should only be granted if the trial court, after considering all of the evidence in the light most favorable to the party opposing the motion, finds that it points so strongly in favor of the moving party that reasonable persons could not arrive at a contrary verdict on the issue. Thus, we must review the entire record to determine if there is substantial evidence that favors the defendants as the non-moving parties.
Summarizing the testimony of two of Mrs. Smith's treating physicians (Dr. Roch Hontas and Dr. Bryan Griffith, Jr.), she sustained an injury to her left knee which resulted in pre-patella bursitis (an inflammation within the small sac that overlies the knee cap) and to her left elbow which resulted in lateral epicondylitis ("tennis elbow"). *29 Mrs. Smith attended nine weeks of physical therapy and received two cortisone injections into her elbow. According to Mrs. Smith, she had an allergic reaction to the cortisone injections, including trouble breathing and chest pains. Approximately ten months after the accident, Mrs. Smith's knee was bothersome only when squatting or kneeling. However, her elbow pain persisted. In fact, Mrs. Smith's testimony at trial, three and one half years after the accident, indicated that she was still having problems with her elbow and considering surgical intervention. The jury determined that the knee injury was an aggravation of a pre-existing condition and the elbow complaints involved a new injury.
According to Dr. Hontas, he advised Mrs. Smith that if her elbow became resistant to treatment, there was a surgical procedure that could be used to correct chronic tennis elbow. Dr. Hontas further testified that the decision as to whether to undergo surgical treatment would depend upon how much of a functional problem the elbow became, and stated that the fact that a patient is still symptomatic three years post-accident would not automatically indicate the necessity for such surgery. The surgical procedure was described by Dr. Hontas as a "relatively simple" outpatient procedure in which the tendons in the elbow would be released to reduce the inflammation in the area. Following surgery, the patient would be placed in a splint for approximately two weeks, and would then undergo physical therapy for approximately four to six weeks, at a frequency of three times per week.
Mrs. Smith testified that the therapy she underwent was "very painful." She indicated that when the therapy did not seem to help, she became very depressed. It was at that point she decided to see a chiropractor. She began seeing Dr. Dwayne Burch in September of 1994. She underwent approximately forty treatments with Dr. Burch from September of 1994 to April of 1995, which included ultrasound treatments to her elbow and the use of an elbow splint. Dr. Burch also treated Mrs. Smith for spinal symptoms that she was experiencing at the time. It should be noted that the jury did not find that Mrs. Smith's complaints regarding her neck and back were related to the accident in question.
According to Mrs. Smith, she is currently unable to do things that she routinely did before the accident. Mrs. Smith stated that prior to the accident, she and her husband would fly-fish together. Since the accident, she has not been able to fish because she cannot "rare her arms back" properly. She also testified that prior to the accident, she did most of the yard work on their six acres of land. In fact, she had even started a business of selling monkey grass from her yard. Mrs. Smith indicated that she is unable to engage in these activities now as they involve a lot of kneeling, pulling grass, and manual labor.
While the above evidence would tend to support Mrs. Smith's position that the jury's general damage award was abusively low, other facts in the record would favor the award reflected by the jury verdict. When all reasonable inferences and factual questions are resolved in favor of the defendants, the record clearly indicates that Mrs. Smith suffered from a myriad of medical problems which were not attributable to the fall. Dr. Clifford Williams, an internist who treated Mrs. Smith for many years prior to this incident, testified regarding her significant medical history, which included swelling in her left knee and tendonitis in her right elbow. Both conditions pre-dated the fall. According to Dr. Williams, Mrs. Smith's medical history prior to the fall also included vertigo (or dizziness), hospitalization for anxiety, pain and tenderness in her back, cervical spasms, acute C-2 cervical spondylitis with C-2 neuralgia causing neck pain, complaints of stumbling and falling on her hands and knees causing a slight fracture in her hand and swelling in her left knee, problems with nervousness and hyperactivity, *30 weeks of unusual pain in her lower leg, degenerative joint disease or osteoarthritis, chronic pain and soreness in her muscle joints, and chronic anxiety symptoms.
Dr. Williams testified that a person who suffers from anxiety and depression would tend to have a lower threshold of pain than the average person and would be more apt to complain. It is significant to note that Mrs. Smith did not have complaints of pain in her left elbow or left knee on several visits to Dr. Williams following this incident. Dr. Williams saw her on January 11, 1994, ten months after the fall. At that time, Mrs. Smith did not complain of elbow or knee pain related to the fall. She returned to Dr. Williams on three other occasions, the last visit being on May 9, 1996, just three months prior to the trial of this matter. Again, Mrs. Smith had no complaints regarding elbow or knee pain.
Furthermore, a review of the record reveals some inconsistencies in Mrs. Smith's trial testimony as compared to her deposition testimony. During her pre-trial deposition, Mrs. Smith denied having any problems with her neck, shoulders, knees or elbows prior to the accident in question. However, at trial, she admitted receiving treatment prior to the accident in question from Dr. Williams for pains all over her body, including neck pain.
Mrs. Smith was asked during her deposition about doctors she had seen before March of 1993. While she provided no testimony at that time regarding doctors she had previously seen, it was learned at trial that she had in fact seen several other doctors, namely, Dr. Sanders, Dr. Fambrough, Dr. Hontas (i.e., the same orthopedic surgeon who rendered treatment to her after the accident at issue), and Dr. James Arbogast, a chiropractor who diagnosed Mrs. Smith with "cervicobrachial syndrome, multiple cervical vertebra, and lumbosacral sprain/ strain" in April of 1992, only eleven months prior to the accident at issue.
We have conducted an exhaustive review of the record and conclude that the trial court erred in granting the JNOV as to the jury's general damage award. Considering all of the evidence, as set forth above, and the reasonable inferences to be drawn therefrom in favor of the defendants, we cannot say that the jury's verdict is one which reasonable people could not have reached. Reasonable persons could have reached the conclusion that a general damage award of $6,000.00 was sufficient to compensate Mrs. Smith when all reasonable inferences or factual questions are resolved in favor of the defendants. Therefore, we reverse the trial court judgment increasing the general damage award, and reinstate the jury verdict regarding same.

Future Mental Anguish and Distress
Mrs. Smith contends that the trial court erred in failing to award her damages for future mental anguish and distress. We note that the jury did not award Mrs. Smith any damages for future mental anguish and distress, nor did the trial court find that the jury's decision in this regard should be set aside.
The record is devoid of evidence that Mrs. Smith will suffer future mental pain and anguish. Furthermore, there is no showing of emotional trauma or distress. In reviewing the record in this matter, resolving all factual questions and reasonable inferences in favor of the defendant, we find that reasonable jurors could have reached the conclusion that Mrs. Smith was not entitled to an award for future mental pain and anguish. As such, a JNOV was not warranted on this issue. This assignment of error is without merit.

Loss of Consortium
The jury's verdict did not include an award for loss of consortium for Mr. Smith. However, in granting the JNOV, the trial court awarded $2,500.00 for same. In reviewing an award for loss of consortium, it is necessary to evaluate the elements which comprise a loss of consortium claim. "Consortium" means much *31 more than sexual relations. The term also includes love and affection, society and companionship, support, aid and assistance, felicity, and performance of material services, e.g., uncompensated work around the home. LSA-C.C. art. 2315; Brungart v. K Mart Corporation, 95-0708, p. 9 (La. App. 1 Cir. 2/23/96), 668 So.2d 1335, 1341, writ denied, 96-0763 (5/3/96), 672 So.2d 686.
Mr. Smith testified that since the accident, he does more work around the house and has had to cut down on the time that he usually spends shrimping. He also indicated that prior to the accident, his wife helped him with his shrimping business. She would take care of weighing the shrimp and dealing with the customers. For enjoyment, the two of them would take two or three day trips on the shrimp boat to fly-fish. He stated that his wife is no longer able to do any of these things with him. Although Mr. Smith indicated that this incident had adversely affected his life, there is no evidence in the record to indicate that there was any loss of love on his part for his wife following the accident. Furthermore, the record contains no evidence that this accident had any effect on the sexual relationship of the Smiths.
Based on the jury's verdict, it is obvious they chose to discredit Mr. Smith's claim for loss of consortium. The jury apparently found that this accident did not cause a deterioration of Mr. Smith's relationship with his wife. Given the numerous medical problems Mrs. Smith had both before and after the fall that were not attributable to the fault of the defendants, and the lack of competent evidence and testimony in the record regarding the loss of consortium claim, we believe the jury verdict denying the loss of consortium claim was not wholly unreasonable. After reviewing all of the evidence in the light most favorable to the defendants, we find that the trial court erred in granting the JNOV as to the loss of consortium claim. Based on the record, it was reasonable for the jury to conclude the injuries from the fall did not adversely impact the relationship of the Smiths. Therefore, we reverse the trial court judgment as to the loss of consortium claim and reinstate the jury verdict denying same.

SHOULDER INJURY
Mrs. Smith contends that the trial court was manifestly erroneous in failing to find that her shoulder injury was related to the accident in question. For the following reasons, we find that this assignment of error is without merit. On April 25, 1995, Mrs. Smith was diagnosed with a condition known as adhesive capsulitis (frozen shoulder). The record reveals that Mrs. Smith had complaints of shoulder pain long prior to this accident. According to Dr. Clifford Williams, she complained of achiness in the medial aspect of her shoulder blades some six years prior to this accident. Dr. Williams testified that Mrs. Smith suffered from a condition known as fibromyalgia, a soft tissue rheumatalogic condition that creates a chronic recurring pain problem. Furthermore, Dr. Reginald Sanders, a rheumatologist, testified that he too diagnosed Mrs. Smith as having fibromyalgia. Dr. Sanders also indicated that adhesive capsulitis arising from trauma should typically manifest itself within two to four weeks of the trauma, but certainly no later than three months. Mrs. Smith did not complain of this particular shoulder condition to Dr. Hontas during her initial course of treatment which continued for some six months after the accident. Based upon the testimony in the record, we find that a reasonable fact finder could conclude that Mrs. Smith did not sustain this shoulder condition as a result of the accident in question.

DECREE
For the foregoing reasons, the judgment of the trial court awarding Mrs. Smith $15,810.00 in general damages and Mr. Smith $1,275.00 in loss of consortium is Reversed and the jury verdict is hereby *32 reinstated.[4] The issue of the costs incurred at the trial court level will be separately addressed.
GUIDRY and KUHN, JJ., concur in part and dissent in part and assign reasons.
WEIMER, Judge, dissenting as to the issue of court costs.
Defendants contend in brief that the trial court erred in assessing all court costs against them, inasmuch as Mrs. Smith was assessed with a substantial degree of fault. Defendants submit that Mrs. Smith should bear 49% of the recoverable court costs in accordance with the jury's allocation of fault.
While it is a general rule that the party cast in judgment should be taxed with costs, the trial court may assess costs in any equitable manner. LSA-C.C.P. art. 1920; Steadman v. Georgia-Pacific Corporation, 95-1463, p. 14-15 (La.App. 1 Cir. 4/6/96), 672 So.2d 420, 428, writ denied, 96-1494 (9/20/96), 679 So.2d 440. The trial court, in its discretion, may assess some costs against a prevailing plaintiff found to be partially at fault; however, the trial court may likewise assess all costs against a defendant cast in judgment despite a finding of fault on the part of the plaintiff. Stockstill v. C.F. Industries, Inc., 94-2072, p. 29 (La.App. 1 Cir. 12/15/95), 665 So.2d 802, 822, writ denied, 96-0149 (3/15/96), 669 So.2d 428. On review, a trial court's assessment of costs can be reversed by this court only upon a showing of an abuse of discretion. Steadman, supra.
In the instant case, both parties prevailed to some extent. The trial court did not give reasons for assessing all costs against the defendants, and the record provides no support for such an inequitable decision. See State ex rel. Guste v. Nicholls College Foundation, 592 So.2d 419, 422 (La.App. 1 Cir.1991), writ denied, 593 So.2d 651 (1992). Accordingly, I find that the trial court abused its discretion in failing to cast Mrs. Smith with costs commensurate with her percentage of fault. I would amend the judgment of the trial court to cast Mrs. Smith for 49% of the costs and defendants for 51% of the costs.
KUHN, Judge, writing for a separate majority addressing the issue of court costs.
The jury verdict determined plaintiff, Irma Smith, to be forty-nine percent at fault and defendants, T.H. Davidge Co., Inc. d/b/a Piggly Wiggly, and Ranger Insurance Company, to be fifty-one percent at fault. Defendants argue that the trial court erred by casting all court costs against them, contending that plaintiffs should have been cast with forty-nine percent of the court costs in accordance with the jury's allocation of fault.
While the assessment of costs may be made to reflect the percentage of negligence attributable to each party, the trial judge may assess costs in any equitable manner pursuant to La. C.C.P. art 1920. This article has been liberally interpreted as granting broad discretion to the trial court. Boutte v. Nissan Motor Corp., 94-1470, p. 13 (La.App. 3d Cir.9/13/95); 663 So.2d 154, 162. Upon review, a trial judge's assessment of costs can be reversed by this court only upon a showing of an abuse of that broad discretion. Robertson v. Penn, 472 So.2d 927, 933 (La. App. 1st Cir.), writ denied, 476 So.2d 353 (La.1985). In the present case, although Mrs. Smith was found to be at fault, we do not find the trial court abused its discretion in taxing defendants with all of the costs. Plaintiffs suit has resulted in a recovery in her favor based on a substantial *33 assessment of fault against the defendants. Under these circumstances we find no abuse of discretion in the trial court's allocation of all costs against the defendants. See Ritchie v. S.S. Kresge Co., Inc., 505 So.2d 831, 834 (La.App. 2d Cir.), writ denied, 507 So.2d 227 (La.1987).

DECREE
For these reasons, that part of the trial court judgment which cast defendants, T.H. Davidge, Inc. d/b/a/ Piggly Wiggly; and Ranger Insurance Company, with all court costs is AFFIRMED. Defendants are also cast with the costs of this appeal.
GUIDRY, J., concurring in part and dissenting in part.
I concur with the majority's opinion with respect to: the affirmance of the trial court's denial of a JNOV on the allocation of fault; the affirmance of the trial court with regard to its decision not to set aside the jury's decision not to award damages for future mental anguish and distress; and in affirming the trial court's decision with regard to failing to find that the appellant's shoulder injury was related to the accident in question.
I respectfully dissent from the majority's opinion with respect to reversing the trial court's granting of a JNOV increasing the original damage award of $6,000.00 to $25,000.00 because the jury's award of $6,000.00 is not supported by the evidence that it had before it, particularly the medical evidence and is wholly unreasonable in light of that evidence. The granting of the JNOV increasing the general damage award to $25,000.00 by the trial court was not error.
Additionally, I dissent in that portion of the majority opinion that reverses the consortium award. The Smith's testimony on this issue was uncontradicted. The trial court did not err based on the record.
For the foregoing reasons, I respectfully concur in part and dissent in part.
KUHN, Judge, concurring in part and dissenting in part.
I agree with the majority's determination that: 1) the trial court correctly denied the judgment notwithstanding the verdict ("JNOV") as to the allocation of fault; 2) a JNOV was not warranted on the issue of future mental anguish and distress; and 3) the trial court was not manifestly erroneous in failing to find that Mrs. Smith's shoulder injury was related to the accident in question.
I disagree with the majority's determination that the trial court erred in granting the JNOV and increasing the general damages award from $6,000.00 to $25,000.00; and in awarding $2,500.00 for Mr. Smith's loss of consortium.
In reversing the trial court's granting of the JNOV with respect to Mrs. Smith's general damage award and Mr. Smith's loss of consortium award, the majority has improperly substituted its opinion for the opinion of the trial court. The trial court properly applied the applicable standard in granting the JNOV. The jury's award of $6,000.00 for general damages was wholly unreasonable based on the facts of this case. The evidence points overwhelmingly in Mrs. Smith's favor establishing the inadequacy of this award. Mrs. Smith sustained a knee injury lasting for six to ten months and an elbow injury that persisted from 1993 through the date of trial, August 22, 1996. Reasonable persons could not have concluded that an award of $6,000.00 was adequate to compensate Mrs. Smith for these injuries. The record does not establish the $6,000.00 award was based on a jury determination that Mrs. Smith was not credible. Rather, the jury's award of $2,000.00 for future medical expenses demonstrates that the jury believed the accident caused significant physical injury to Mrs. Smith. The majority fails to discuss this award which recognizes that Mrs. Smith will have medical problems in the future. The majority's conclusion that reasonable people could agree on a $6,000.00 general damages award is not *34 supported by the record. It is obvious that the jury simply did not understand their function and that their award was based on a lack of sophistication in assessing the damages which Mrs. Smith sustained. The trial court properly granted the JNOV to increase the general damages award.
The record also strongly supports the trial court's JNOV on the loss of consortium claim. The testimony of Mr. and Mrs. Smith regarding the loss of companionship, support, aid and performance of material services was not contradicted. Once again, the record does not establish the jury disbelieved Mr. and Mrs. Smith. Accordingly, the record supports the trial court's determination that the evidence pointed so strongly in favor of finding that Mr. Smith suffered a loss of consortium that reasonable persons could not have found otherwise. I would affirm the trial court's $2,500.00 loss of consortium award to Mr. Smith.
For the above reasons, I respectfully concur in part and dissent in part.
NOTES
[1] It was learned during pretrial proceedings that T.H. Davidge, Inc. (rather than named defendant Davill Petroleum Company, Inc.) was in fact the corporate entity that operated the Piggly Wiggly in question. Thus, with the consent of both parties, the plaintiffs were allowed to amend their petition for damages on the morning of trial, naming as defendant T.H. Davidge, Inc., d/b/a Piggly Wiggly. Davill Petroleum was later released from the case pursuant to a directed verdict as it was neither the owner nor operator of the premises or of the Piggly Wiggly.
[2] A review of the record indicates that the Petition for Appeal only relates to the final judgment rendered on October 10, 1996, which involves the trial court's granting in part and denying in part the Motion for Judgment Notwithstanding the Verdict.
[3] A more contemporary reference would be to "reasonable persons" and "reasonable and fair-minded persons."
[4] We note that in accordance with LSA-C.C.P. art. 1811 C(1), the trial court, in its written reasons for judgment which addressed the JNOV, also "provisionally (conditionally) den[ied] the motion for new trial, in the event that the JNOV is reversed on appeal." The judgment itself does not reference the denial of the motion for new trial. The denial of the motion for new trial is not before us.