NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-68 consolidated with 07-70

THE COWBOY CONNECTION, INC.

VERSUS

STATE OF LA., DOTD

**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NOS. 62,499B AND 64,142B
HONORABLE JOHN C. FORD, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Elizabeth A. Pickett, Judges.

PETERS, J., CONCURS IN THE RESULT.

AFFIRMED IN PART; REVERSED IN PART.

Michael Wayne Landry
Assistant Attorney General
556 Jefferson Street - 4th Floor
Lafayette, LA 70501
Telephone: (337) 262-1700
COUNSEL FOR:
    Defendant/Appellant - State of LA., DOTD

**E. Grey Burnes Talley**
**Burnes, Burnes, & Talley**
**P. O. Box 650**
**Alexandria, La 71309-0650**
**Telephone:  (318) 442-5231**
**COUNSEL FOR:**
      **Plaintiff/Appellee - The Cowboy Connection, Inc.**

**THIBODEAUX, Chief Judge.**

Plaintiffs-appellees, the Cowboy Connection, Inc. and (its successor corporation) the Western Connection, Inc. d/b/a the Cowboy Connection, sued the defendant-appellant, the State of Louisiana, through the Department of Transportation and Development (DOTD), for damages due to the alleged negligent maintenance of underground culverts located in the highway right-of-way in front of the business. Plaintiffs claim that the negligence led to two separate collapses of areas on and near the business's parking lot and that the DOTD's lengthy repair periods impeded customer access to the business, causing such large losses in sales income that the business was forced to close permanently.

A jury found that the DOTD negligently maintained and repaired the right-of-way and awarded the Cowboy Connection, Inc. $25,000.00 in damages; however, only 10% fault was assessed to the DOTD and the remaining 90% was assessed to the Cowboy Connection, Inc. The jury found that the Western Connection, Inc. did not suffer any damages. A post-trial Motion for Judgment Notwithstanding the Verdict (JNOV) filed by the plaintiffs was granted in part. The trial court reassessed the damages, placing 100% of the fault on the DOTD for the Cowboy Connection, Inc.'s damages. The motion for JNOV was denied in all other respects.

The DOTD has appealed that partial grant of the JNOV and the plaintiffs have answered the appeal. The plaintiffs, in their appeal, claim that the jury erred in finding that the Western Connection, Inc. suffered no damages for which the DOTD should be held liable and seek a reversal of the jury's findings as to the Western Connection, Inc. Plaintiffs also claim that the jury erred in its assessment of damages to the Cowboy Connection, Inc. and seek an increase in the damages awarded.

We find that the jury manifestly erred in finding the DOTD liable to the Cowboy Connection, Inc. for negligent maintenance and repair of the right-of-way. Therefore, the trial court's judgment pursuant to the jury verdict assessing fault to the DOTD for those asserted damages is reversed. The issue of the propriety of the trial court's subsequent partial grant of the motion for JNOV and reassessment of fault, in this regard, is, consequently, moot. The jury's finding of $0 in damages to the Western Connection, Inc., as well as the trial court's subsequent denial of the motion for JNOV as to that finding, are affirmed.

I.

## ISSUES

1. Was the assessment of damages to the Cowboy Connection, Inc. and the apportionment of fault to the DOTD for those damages reasonable?

2. Did the Western Connection, Inc. suffer damages as a result of the DOTD's negligence in maintaining and in repairing the underground culverts?

3. Did the trial court err in denying the plaintiffs' motion for judgment notwithstanding the verdict as to Western Connection, Inc.?

II.

## FACTUAL BACKGROUND

This consolidated action arises out of two, separately-occurring cave-ins of concrete pavement located next to and on the parking lot of the western apparel store, the Cowboy Connection. The cave-ins were precipitated by underground soil erosion near deteriorated and leaking culverts. The involved culverts were located within the State's right-of-way along a portion of Highway 171 in Leesville, Louisiana, which runs directly in front of the parking lot of the plaintiffs' store frontage on Highway 171. The first cave-in occurred near the Cowboy Connection's

front entrance and caused damage to its large steel canopy, which covered the majority of the storefront. Approximately one year later, the second cave-in occurred at the edge of the business's parking lot on the highway's shoulder, which abutted the southernmost corner entrance to the parking lot.

*The First Cave-In*

The first collapse occurred on October 11, 1997. One of the two-feet by two-feet wide brick columns supporting the store-front canopy sank about a foot into an underground cavern that had developed underneath the parking lot slab. The other column suffered a severe break in its brick and mortar and began collapsing as well. The damage was first discovered by Patricia Lott Sweeney[1], the co-owner and manager of the Cowboy Connection, Inc., when she arrived that morning to open the store for business. The store could not be opened that day, however, because of the instability of the canopy structure. Rather, a perimeter of plastic, orange fencing was set up around the entire canopy by general contractor Patrick Williams, who was also one of the first to witness the damage from his nearby business. The DOTD's parish maintenance office located in Leesville was notified of the incident that morning because of the location of the collapse, which appeared to be in the highway right-of-way.

The parish's maintenance superintendent, Oliver Perkins, viewed the damage that day and opined that a deteriorated or leaking drainage culvert may have caused soil erosion at the site. However, before the DOTD could perform any excavation to further investigate and perform any repairs, the canopy had to be removed. The property owner, Mrs. Bernita Lambert, hired Mr. Williams's

---

[1] At this time in 1997, Mrs. Lott was undergoing a divorce from the co-owner of the Cowboy Connection, Charles Lott. She had remarried by the time the trial commenced and, by that time, referred to herself as Patricia Sweeney. For purposes of this appeal, she will be referred to as Patricia Lott.

contracting company to demolish and remove the unstable canopy. This work was completed in approximately three days. The Cowboy Connection remained closed during this time period but reopened immediately thereafter, according to Mrs. Lott, although a hole still existed in the parking lot at the location of the collapse. The area encompassing the collapsed concrete remained blocked off with barricades, warning barrels, and yellow construction warning tape. The enclosed area formed a perimeter around a large portion of the storefront, which included the only public entrance to the business. Mrs. Lott stated that customers had to walk under construction tape to enter the business.

The DOTD began its underground repair work shortly after the canopy demolition was completed. A total of fifty-one days elapsed from the time the DOTD began its repairs until its safety barricades were removed from the parking lot. Mr. Perkins explained that this time included occasional weather delays; the occasional unavailability of his crew, which was still performing work throughout the parish on a priority basis; time lapses in the performance of work due to the unavailability of the sole construction crew that performed work for a seven-parish area; wait-time for the arrival of equipment from elsewhere in the parish to be used to perform excavation at the site; and periods in which determinations had to be made by supervisors at the DOTD regarding its responsibility for certain repairs, particularly the repair of the caved-in portion of the parking lot, for which there was a dispute as to whether it was located in the highway right-of-way.

The DOTD's repair work actually began on or about October 16, 1997, shortly after the demolition of the canopy had been completed. The area maintenance specialist, Woodrow Young, whose office was located in Alexandria, Louisiana, traveled to Leesville to inspect the damage. This inspection of the damage was performed by the maintenance specialist, Mr. Perkins, and other crew members on

October 20, 2007.  Equipment for further excavation at the site was then requested from Alexandria, and it arrived on October 28, 1997.  On October 29, 2007, the soil and debris from the cave-in were dug out by the DOTD crew and multiple holes were found in a nearby culvert.

The construction foreman, George Weatherford, Mr. Perkins, and other crew members were first able to perform an underground inspection to further determine the extent of the damage on November 3, 1997.  They walked the entire length of a large culvert that ran in an easterly and westerly direction and traversed a portion of the Cowboy Connection, Inc.'s parking lot.  It connected to a smaller culvert, approximately two feet in diameter, which ran in a northerly and southerly direction along the highway's right-of-way located in front of the Cowboy Connection, Inc.  A large crack in the junction box/box culvert (the point at which the two culverts connected) was found, and they saw that its top was decayed and had fallen in.  The junction box was located in the right-of-way near the area where substantial soil erosion had occurred underneath one of the Cowboy Connection's columns. The construction crew built a new form around the cracked box culvert and poured concrete to create a new box culvert.  On November 4, 1997, the DOTD construction crew removed its forms, back-filled the hole, poured the top with concrete, and completed the concrete finishing work over the new box culvert.

This repair, however, did not address the hole that remained on the lot of the Cowboy Connection, Inc.  Mrs. Lott complained to Mr. Perkins on November 5, 1997, of the DOTD's failure to pour concrete at the location of the cave-in on the parking lot.  The dispute was eventually resolved and the DOTD determined that it would repair the hole on the parking lot due to its proximity to the highway right-of-way.  The DOTD's construction crew began filling in the hole with dirt on November 7, 1997. Mr. Young was onsite measuring the area to be repaired on November 19,

6

1997, and on November 24, 1997, the construction crew was back onsite, performing further excavation and laying steel for the re-pouring of the concrete in the parking lot. The concrete was poured on November 24, 1997, and all barricades were removed from the site on December 1, 1997.

### *The Second Cave-In*

In June 1998, the Cowboy Connection, Inc. had been dissolved and its assets transferred to a new corporation, the Western Connection, Inc., which continued to do business as the Cowboy Connection at the same location. Mrs. Lott had become the sole owner of the business after her divorce, and the new corporate entity had been formed to reflect this change in ownership. The second cave-in occurred after this time on or about September 16, 1998. This collapse of pavement occurred in the State right-of-way on Highway 171 next to the southern corner of the business's parking lot. DOTD barricades and warning lights were placed around the collapsed area at the corner of the lot. The parking lot's entrance was not blocked as a result of the collapse or placement of the barricades.

On September 21st and 22nd, 1998, the DOTD performed necessary repair work at the site, which included replacement of a section of the two-feet wide culvert that connected to the larger culvert that traversed a portion of the Western Connection, Inc.'s lot and had been inspected as a result of the first collapse the prior year. A crack was found in this smaller culvert as a result of excavation performed after the second collapse. Soil was compacted over the culvert, and the repair work was deemed completed by the DOTD on September 22nd. However, because the concrete was not re-poured at that time, the barricades, warning barrels, and lights were not removed until March 15, 1999, when the concrete finishing work was finally completed.

## *Damages Alleged*

On October 9, 1998, the Cowboy Connection, Inc. sued the DOTD for damages arising out of the first cave-in. A second lawsuit was filed by the entity, the Western Connection, Inc. on September 16, 1999, for damages arising out of the second cave-in. The two actions were later consolidated. The claims asserted in both suits are that the DOTD negligently maintained its underground drainage system and failed to take proper measures to ensure the integrity of its roadways and shoulders, resulting in the collapses and subsequent damage to the plaintiffs' businesses. During the trial, it was asserted by the plaintiffs that both incidents caused major disruptions in the businesses during their peak October rodeo shopping seasons in 1997 and 1998 and during the November and December Christmas shopping seasons of those years as well. The plaintiffs claimed that potential customers were deterred from shopping there despite proactive advertising and promotional activities on local radio, television and storefront displays because the appearance of the barricades and ongoing construction caused people to perceive that the entire lot was unstable. In December 1999, the Western Connection, Inc. closed and entered into bankruptcy proceedings.

III.

## LAW AND DISCUSSION

### *The DOTD's Liability*

A plaintiff asserting either a claim of negligence, based on La.Civ.Code

art. 2315[2], or strict liability, pursuant to La.Civ.Code art. 2317[3] or La.R.S. 9:2800[4],

---

[2]Civil Code Article 2315(A) states that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

[3]Civil Code Article 2317 states, in relevant part:  "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."

[4]**§2800.  Limitation of liability for public bodies**

A.  A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.

B.  Where other constructions are placed upon state property by someone other than the state, and the right to keep the improvements on the property has expired, the state shall not be responsible for any damages caused thereby unless the state affirmatively takes control of and utilizes the improvement for the state's benefit and use.

C.  Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

D.  Constructive notice shall mean the existence of facts which infer actual knowledge.

E.  A public entity that responds to or makes an examination or inspection of any public site or area in response to reports or complaints of a defective condition on property of which the entity has no ownership or control and that takes steps to forewarn or alert the public of such defective condition, such as erecting barricades or warning devices in or adjacent to an area, does not thereby gain custody, control, or garde of the area or assume a duty to prevent personal injury, wrongful death, property damage, or other loss as to render the public entity liable unless it is shown that the entity failed to notify the public entity which does have care and custody of the property of the defect within a reasonable length of time.

F.  A violation of the rules and regulations promulgated by a public entity is not negligence per se.

G.  (1) "Public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.  Public entity also includes housing authorities, as

against a public entity, such as the DOTD, for damages allegedly caused by a thing in its care and custody, bears the burden of showing the following:

> (1) DOTD had custody of the thing that caused the plaintiff's injuries or damages;
>
> (2) the thing was defective because it had a condition that created an unreasonable risk of harm;
>
> (3) DOTD had actual or constructive knowledge of the defect and failed to take corrective measures within a reasonable time; and
>
> (4) the defect in the thing was a cause-in-fact of the plaintiff's injuries.

*Netecke v. State ex rel. DOTD*, 98-1182, 98-1197, p. 7 (La. 10/19/99), 747 So.2d 489, 494. In *Netecke*, the supreme court explained the DOTD's duty regarding public roadways and areas within its right-of-way:

> DOTD's duty is to maintain the public roadways in a condition that is *reasonably safe and does not present an unreasonable risk of harm* to the motoring public *exercising ordinary care and reasonable prudence*. DOTD must maintain the shoulders and the area off the shoulders, within its right-of-way, in such a condition that they *do not present an unreasonable risk of harm* to motorists using the adjacent roadway and to others, such as pedestrians, *who are using the area in a reasonably prudent manner*. DOTD's duty to maintain safe shoulders encompasses the foreseeable risk that for any number of reasons a motorist might find himself on, or partially on, the shoulder. This duty extends not only to prudent and attentive drivers, but also to motorists who are slightly exceeding the speed limit or momentarily inattentive.
>
> This duty, however, does not render DOTD the guarantor for the safety of all the motoring public. *Further, DOTD is not the insurer for all injuries or*

---

defined in R.S. 40:384(15), and their commissioners and other officers and employees and sewerage and water boards and their employees, servants, agents, or subcontractors.

(2) "Public site or area" means any publicly owned or common thing, or any privately owned property over which the public's access is not prohibited, limited, or restricted in some manner including those areas of unrestricted access such as streets, sidewalks, parks, or public squares.

> *damages resulting from any risk posed by obstructions on or defects in the roadway or its appurtenances. Moreover, not every imperfection or irregularity will give rise to liability, but only a condition that could reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. The existence of an unreasonable risk of harm may not be inferred solely from the fact that an accident occurred.* Whether DOTD breached its duty to the public, by knowingly maintaining a defective or unreasonably dangerous roadway, depends on all the facts and circumstances determined on a case by case basis.

*Netecke*, 747 So.2d at 494-5 (citations omitted) (emphasis added). We recognize this dispute does not involve a highway injury. The same principles, however, apply. Applying these principles, we find that the plaintiffs failed to establish that the DOTD could be held liable in negligence for the asserted damages as a result of the first collapse that occurred in October 1997. Specifically, the plaintiffs failed to establish that the underground culverts created an unreasonable risk of harm, nor did they establish that the DOTD had actual or constructive knowledge of the alleged unreasonable risks posed, yet failed to remedy the conditions before the complained-of event occurred.

*Unreasonable Risk of Harm*

The determination of an unreasonable risk of harm must be made by the fact-finder by weighing the social utility of the structure or thing at issue versus the likelihood and severity of harm. *Gauthier v. City of New Iberia*, 06-341 (La.App. 3 Cir. 9/27/06), 940 So.2d 915 (citing *Oster v. Dep't of Transp. & Dev., State of La.*, 582 So.2d 1285 (La.1991) and *Clark v. Hartford Acc. & Indem. Co.*, 562 So.2d 50 (La.App. 3 Cir. 1990)). This determination must be based on the particular facts and circumstances of each case. *Id.*

At issue in this case are one or more concrete, underground culverts located in the State's right-of-way on Highway 171 in front of the Cowboy

Connection apparel store. The social utility of such underground drainage systems is evident via the legislation that has been created, authorizing the State's construction of these systems, as deemed necessary, to properly drain state highways. *See* La.R.S. 48:223.[5] In addition, the State has been granted authority by the legislature to place these constructions in state highway right-of-ways. *Id*.

On the other hand, the evidence and testimony presented at trial did not establish that the culverts implicated, nor the box culvert, created an unreasonable risk of injury to persons exercising ordinary care and prudence. *See Entrevia v. Hood*, 427 So.2d 1146 (La.1983). To determine whether the culverts caused an unreasonable risk of harm, the magnitude and probability of injury is to be weighed against the burden of preventing injury. *Entrevia*, 427 So.2d 1146. In this case, the testimony and evidence revealed that the culverts at issue pre-dated 1972 in age, but there was no evidence presented of any prior failures or collapses in or around the areas of these culverts prior to the incidents in question. Rather, it was established that an undetected leak due to deterioration in the box culvert connecting the culverts near the area of the collapse may have caused slow occurring soil erosion. Moreover, it was established that this deterioration and erosion was undetectable absent evidence of sagging or cracking on the surface. No evidence of the existence of any sagging or cracking at that location prior to the collapse was presented during the trial.

---

[5]La.R.S. 48:223(A) states:

A. The department may construct canals, ditches, or drains sufficient in its judgment to properly drain any highway embraced in the system of state highways constructed or to be constructed through any lands of private persons. The rights of way for these canals may be acquired in the same manner and on the same basis of compensation as provided for acquiring rights of way for highways.

Rather, the DOTD established that the actual damage to the parking lot and the plaintiffs' canopy occurred, not solely because of the soil erosion caused by leaks, but also due to imprudent and unsound construction of the canopy that encroached upon the highway right-of-way at that location. Specifically, the heavy, steel canopy structure encroaching upon the state's right-of-way was not properly built on support piers. Expert testimony by civil engineer John Brusen, asserted that the structure was not constructed in a standard manner because the weight of the canopy was improperly resting on the parking lot slab. Consequently, this lack of support led to the subsequent collapse of the northern column when significant soil erosion underneath the slab occurred. He asserted that the collapse of the storefront canopy may have been prevented if proper construction methods had been employed. There was no evidence presented by the plaintiffs to contradict this.

We find, accordingly, that the testimony and evidence does not support a finding that the drainage culverts that were implicated were defective or created unreasonably dangerous conditions. Additionally, the evidence and testimony showed that the area on and/or near the culverts was not being used by the property owner in a reasonably prudent manner. As such, the facts do not establish that the DOTD was in control of a defective thing that posed an unreasonable risk of harm to a plaintiff who was using the premises in a reasonable manner.

*Actual or Constructive Notice*

We also find that the plaintiffs failed to establish that the DOTD had actual or constructive knowledge of the alleged defects before the October 1997 collapse or that the DOTD failed to take corrective measures within a reasonable time, given such notice. "Actual notice is knowledge of dangerous defects or conditions by a corporate office or employee of the public entity having a duty either

13

to keep the property involved in good repair or to report defects and dangerous conditions to the proper authorities." *Boddie v. State*, 27,313, p. 6 (La.App. 2 Cir. 9/27/95), 661 So.2d 617, 622. Constructive notice, according to La.R.S. 9:2800(D), means "the existence of facts which infer actual knowledge."

Evidence and testimony was presented by the DOTD that the October 1997 collapse was the consequence of soil erosion that occurred over an extended period of time underneath the parking lot's pavement and was contributed to by the faulty construction of the columns supporting the store-front canopy. Uncontradicted testimony was presented that regular visual, above-ground inspections of the area were performed by the parish maintenance superintendent as required by the DOTD. It was also established that his inspections could not have led to the detection of the underground problems that were occurring due to the lack of any above-ground evidence of the underground conditions.

The record further reflects that Mrs. Lott; her daughter, Elizabeth Wilson (a long-time store employee); Mrs. Lambert (the property owner); and contractor, Patrick Williams, all testified that the first collapse was unexpected and sudden. There was no testimony provided from any source of the presence of a pre-existing condition that would have indicated the instability of the concrete near or at the site of the cave-in. Accordingly, the element of notice on the part of the DOTD was not established by the plaintiffs.

The DOTD cannot be held liable for damages absent the establishment of the four elements necessary to the establishment of a claim against a public entity, as was explained in *Netecke*, 747 So.2d 489. Therefore, the jury's verdict, assessing fault to the DOTD for the Cowboy Connection's damages, is manifestly erroneous and is reversed.

14

For the sake of clarity, we expressly state that the jury did not manifestly err by finding that the DOTD was negligent in its repair and maintenance of the portion of the right-of-way that was the subject of the Western Connection, Inc.'s claims. Contradictory testimony was presented regarding the existence of a "sink hole" and/or cracks in the pavement near the location of the second collapse, before its occurrence. In addition, testimony was presented that raised the issues of whether the excavation and repair work that was conducted after the first collapse put the DOTD's employees on notice of a problem or potential problem at the second collapse site and whether they should have taken action to undertake further excavation and repair work at that time. Consequently, we shall address the plaintiffs' appeal of the jury's award of $0 in damages to the Western Connection, Inc. and the trial court's denial of the motion for JNOV as to that portion of the verdict.

*Judgment Notwithstanding the Verdict*

Regarding the jury's verdict rendered as to the Western Connection, Inc. and the trial court's subsequent denial of the plaintiffs' motion for JNOV in that regard, we are required to employ a two-part inquiry upon review of the trial court's ruling. *Davis v. Wal-Mart Stores, Inc.*, 00-445 (La. 11/28/00), 774 So.2d 84. First, the reviewing court has to determine whether the trial court erred in denying the motion by applying the same criteria to the jury verdict as that which the trial court applied when it considered the motion. *Id.* Those criteria are as follows:

> A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the

> motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. *Smith v. Davill Petroleum Company, Inc. d/b/a/ Piggly Wiggly*, 97-1596 (La.App. 1 Cir. 12/9/98), 744 So.2d 23. *See also, Powell v. RTA*, 96-0715 (La. 6/18/97), 695 So.2d 1326; *Anderson v. New Orleans Public Service*, 583 So.2d 829 (La.1991); *State of Louisiana, DOTD v. Scramuzza*, 95-786 (La.App. 5 Cir. 4/3/96), 673 So.2d 1249; *Seagers v. Pailet*, 95-52 (La.App. 5 Cir. 5/10/95), 656 So.2d 700; *Engolia v. Allain*, 625 So.2d 723, 728 (La.App. 1 Cir.1993); *Adams v. Security Ins. Co. Of Hartford*, 543 So.2d 480, 486 (La.1989).

*Davis*, 774 So.2d at 89. If the appellate court determines that the trial court properly applied the aforementioned standard to the jury's verdict, the appellate court must then review the JNOV using the manifest error standard of review. *Id*. (citing *Anderson*, 583 So.2d 829).

In this case, the trial court denied the motion for JNOV, explaining its reasoning as follows:

> Reasonable minds could perhaps differ on damage sustained by Western Connection. That cave-in occurred approximately on the southern one-half of the parking lot and did not significantly restrict access to the business.

We find no error in the trial court's application of the criteria for consideration of the motion for JNOV. We, too, find that the evidence presented does not point so overwhelmingly in favor of the plaintiffs that reasonable persons could not have reached the jury's decision. In reviewing the evidence and testimony presented on the issue of whether the Western Connection, Inc. suffered damages as a result of the second collapse that occurred in September 1998, the record revealed these relevant facts: the collapse did not occur on the premises of the Western Connection, Inc.; the business never closed during the period after the collapse as a result of ongoing work or barricades; the parking lot entrance was not obstructed by construction or

16

barricades; and all major excavation was completed and equipment removed within a two-day repair period. Although it was argued that the nearby location of the construction and the six-month period in which the barricades were located next to the parking lot entrance served as catalysts for the business's declining sales, we find that the jury's award of $0 in damages is, nevertheless, reasonably supported by the record and, as such, is not manifestly erroneous.

Accordingly, the jury's assessment of $0 in damages to the Western Connection, Inc. and the trial court's denial of the plaintiffs' motion for JNOV, in that regard, are affirmed.

## IV.

## <u>CONCLUSION</u>

The jury verdict finding that the State, through the Department of Transportation and Development, was negligent in maintaining and repairing the right-of-way such that damages were suffered by the Cowboy Connection, Inc., is manifestly erroneous and is reversed. The trial court's denial of the motion for judgment notwithstanding the verdict of $0 in damages to the Western Connection, Inc. is affirmed. All costs of this appeal are assessed to the plaintiffs, Cowboy Connection, Inc. and Western Connection, Inc.

**AFFIRMED IN PART; REVERSED IN PART.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules—Courts of Appeal.

17