835 So.2d 580 (2002)
Elizabeth YOHN
v.
Kenneth W. BRANDON, as Administrator of the Estate of His Minor Daughter, Kristin Nicole Brandon, and Assurance Company of America
No. 2001 CA 1896.
Court of Appeal of Louisiana, First Circuit.
September 27, 2002.
Writ Denied December 13, 2002.
*582 Floyd J. Falcon, Jr., Daniel L. Avant, Baton Rouge, Counsel for Plaintiff-Appellee Elizabeth Yohn.
Owen A. Neff, Roy J. DiVincenti, III, Gigi Fontenot Roberts, Lindsey J. Leavoy, L. Adrienne Dupont, Baton Rouge, Counsel for Defendants-Appellants Kenneth W. Brandon, As Administrator of the Estate of His Minor Daughter, Kristin Nicole Brandon, and Assurance Company of America.
Before: FITZSIMMONS, GUIDRY and PETTIGREW, JJ.
FITZSIMMONS, J.
Plaintiff, Elizabeth Yohn,[1] filed suit against defendants, Kenneth W. Brandon, as administrator for the estate of his minor daughter, Kristin Nicole Brandon, and their insurer, Assurance Company of America, for damages from a traffic accident. After a jury verdict that failed to award damages, the trial judge granted Ms. Yohn's motion for Judgment Notwithstanding the Verdict (JNOV) and awarded damages to her. Defendants appealed. Ms. Yohn answered the appeal and asked for an increase in the damage award. We reverse the JNOV, and reinstate the verdict of the jury.

FACTS AND PROCEDURAL BACKGROUND
On June 9, 1997, Ms. Brandon and Ms. Yohn were stopped at an intersection. Under the impression that Ms. Yohn's leading vehicle had moved forward, Ms. Brandon started forward. Unfortunately, Ms. Yohn's truck was stopped, and was hit in the rear by Ms. Brandon's vehicle. Ms. Yohn continued to work full time from the date of the accident until early in July of 1997.
On July 2, 1997, Ms. Yohn's truck hit a bump. The impact threw her cargo of uniforms onto the floor of the truck. She had to quickly re-hang her stock and continue with her route. Defendants alleged that this second injury to Ms. Yohn at work caused the damages sought.
At trial, Ms. Yohn testified that, from 1993 through 1997, she had seen a chiropractor "several times a year" for soreness in her back. On a form filled out for a physical therapist in August of 1997, she stated that she had experienced back pain for years. Although Ms. Yohn denied that she suffered any injury from the July 2nd incident, contradictory statements by Ms. Yohn appear in the medical record. At trial, she testified that the pain from the June accident worsened daily, which finally forced her to quit on July 2, 1997. She denied any connection between the July 2nd alleged injury and the fact that she quit working on that same day. In 1998, she tried a less strenuous job with the same employer, but was unable to meet the performance requirements. She testified that her continued pain from the June accident caused the problems with the second job.
Dr. Dale Rollette, a chiropractor, first saw Ms. Yohn on June 13, 1997. Ms. Yohn reported that she experienced neck soreness immediately after the June accident, and suffered back pain shortly thereafter. Dr. Rollette testified that he found some *583 objective signs of Ms. Yohn's complaints of neck and back pain. However, she also told Dr. Rollette that it was the low back pain that brought her in for treatment. Dr. Rollette advised Ms. Yohn to stop working, but she continued to work full time until early July of 1997. Although Ms. Yohn denied it, Dr. Rollette's records of July 2, 1997, contain a report by Ms. Yohn to his office that she strained her back at work, and had missed her appointment for that reason. Although Dr. Rollette did not classify the July 2nd incident as a new injury, he stated that the July 2nd incident did not help the June injury.
Dr. Roch Hontas, an orthopedic surgeon, first saw Ms. Yohn on July 24, 1997. Dr. Hontas testified that on the first visit, a little over a month after the June accident, Ms. Yohn reported that the neck pain had almost completely resolved, and her primary complaint was her lower back. Although contradicted by Ms. Yohn, Dr. Hontas testified that, based on her preliminary complaints, he did not examine her neck. Upon examination, he did find spasm in her lower right back. Again in contradiction of Ms. Yohn's testimony, Dr. Hontas testified that she reported to him that she was responding well to treatment until July 2, 1997. A nurse's note in Dr. Hontas's records stated that Ms. Yohn went to Dr. Rollette after the first injury, and got relief, but the pain worsened after the second injury. Specifically, Ms. Yohn reported to Dr. Hontas that she continued to work until July 2, 1997, when "while driving her truck she apparently hit a bump." He testified that she told him "that her pain worsened under those sets of circumstances. They worsened to the point where she discontinued the work activities July 7th, which was five days later...." Dr. Hontas felt that the MRI identified a problem at L1-2 that was a degenerative condition not caused by the accident in June or any incident in July. Based on the information he had, his diagnosis was a soft tissue injury caused by the June accident; specifically a lumbosacral sprain, which was exacerbated by the July 2nd work incident. However, Dr. Hontas was unaware of her prior back problems.
Dr. John Clark, a physician specializing in physical medicine and rehabilitation, saw Ms. Yohn in March of 1999. She reported that her cervical complaints had resolved, but that she still experienced back pain. Dr. Clark related her injury to the June accident, but was unaware of the prior back pain and treatment. In response to questioning, he agreed that the July incident could be a superseding cause.
As of the dates of the trial in March of 2001, Ms. Yohn continued to experience pain that she related to the June 9, 1997 accident. Dr. Dowin Robinson, a chiropractor, treated her in early 2001. Ms. Yohn told him that after the July 2, 1997 incident, the "pain came back" and that, because of the "pain in the back," she "couldn't lift, couldn't drive, [and] no longer worked."
The jury was also presented with the testimony of defendants' medical expert, Dr. Thomas Flynn, a neurosurgeon. On June 19, 2000, Ms. Yohn told Dr. Flynn of her continuing complaints of headaches, and neck and back pain. She reported that she was in an accident in June of 1997, but she had improved only to the extent of about 4 percent. Additionally, Ms. Yohn told Dr. Flynn about a prior jet ski accident in which she injured her back, but did not mention the July 2nd work incident. After his examination, Dr. Flynn testified that her neck and back seemed objectively normal. With a sprain or strain that had not resolved in more than three years, he would have expected some evidence of structural change on x-ray or scan, but did not see anything to explain *584 her on-going problem. In the 1997 MRI, Dr. Flynn did see evidence of chronic degenerative changes that had developed over time, rather than as the result of an immediate strong or blunt trauma.
The jury found that Ms. Brandon caused the June accident, but that the June accident did not cause Ms. Yohn's claimed damages. With a verdict that awarded no damages, the jury must not have believed Ms. Yohn's version of the cause of her claimed damages for lost wages, medical expenses, and pain. On April 4, 2001, the trial judge entered an amended judgment based on the jury verdict in favor of Ms. Yohn on the cause of the accident, but against her, and in favor of defendants, on the issue of damages. The April judgment also assessed all costs and expert fees to the defendants.
In response to the jury's denial of damages, Ms. Yohn filed a motion for JNOV on that issue. The trial court granted the JNOV in favor of Ms. Yohn, and awarded damages. As reasons for granting the JNOV, the trial judge spoke of the dictates of his heart and stated that he had "strong feelings" that Ms. Yohn did suffer some damages as a result of the June accident. The trial court also observed that the testimony of a pre-existing condition could have been grounds for the jury's verdict, but the court rejected that view as "overwhelmed by the evidence." Primarily, the trial judge was troubled by the absence of the chiropractic records from 1993 until the accident in June of 1997. The trial judge awarded Ms. Yohn medical expenses of $18,494.58, lost wages of $16,800.00, general damages of $10,000.00, expert witness fees, and court costs.
On appeal, the defendants assert that the JNOV was granted in error. Secondly, they assign error to the trial judge's assessment to defendants of the court costs and expert fees.
APPLICABLE LEGAL PRECEPTS
In a personal injury suit, plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident which caused the injury. Plaintiff must prove causation by a preponderance of the evidence. The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. (Citations omitted.)
Maranto v. Goodyear Tire & Rubber Co., 94-2603, 94-2615, p. 3 (La.2/20/95), 650 So.2d 757, 759; see McNeely v. Ford Motor Company, Inc., 98-2139, p. 12 (La.App. 1 Cir. 12/28/99), 763 So.2d 659, 667, writ denied, XXXX-XXXX (La.4/28/00), 760 So.2d 1182. Generally, the effect and weight to be given medical expert testimony is within the broad discretion of the factfinder. Shows v. Shoney's, Inc., 98-1254, p. 18 (La.App. 1 Cir. 7/29/99), 738 So.2d 724, 737. A tort-feasor is liable only for damages caused by his negligent act. He is not liable for damages caused by separate, independent or intervening causes. McNeely v. Ford Motor Company, Inc., 98-2139 at p. 12, 763 So.2d at 667. Hence, the plaintiff has the burden of proving that her injuries were not the result of such separate, independent, or intervening causes. Shows v. Shoney's, Inc., 98-1254 at p. 10, 738 So.2d at 732.
It is axiomatic that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. A plaintiff with a pre-existing condition is entitled to be compensated if plaintiff can prove a defendant's negligent act caused an aggravation of the pre-existing condition. *585 See Perniciaro v. Brinch, 384 So.2d 392, 395-96 (La.1980).
The standard of review for a JNOV on appeal is a two-part inquiry. In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by the reviewing court using the same criteria used by the trial judge to decide whether to grant the motion. Joseph v. Broussard Rice Mill, Inc., XXXX-XXXX, p. 5 (La.10/30/00), 772 So.2d 94, 99. In other words, considering all the evidence in the light most favorable to the party opposing the motion for JNOV, do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict? Smith v. Davill Petroleum Co., Inc., 97-1596, p. 4 (La.App. 1 Cir. 12/09/98), 744 So.2d 23, 27. "If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable persons in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated." Joseph v. Broussard Rice Mill, Inc., XXXX-XXXX at p. 5, 772 So.2d at 99. If we determine that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review. Smith v. Davill Petroleum Co., Inc., 97-1596 at pp. 4-5, 744 So.2d at 27.

APPLICATION OF LEGAL PRECEPTS TO FACTS
The hurdle imposed by a motion for JNOV is higher than that required in a manifest or clear error review by this court. To grant the JNOV, the trial court had to find that, considering all the evidence in the light most favorable to the defendants, the facts and inferences pointed so strongly and overwhelmingly in favor of Ms. Yohn that reasonable jurors could not have found against her. If reasonable persons, in the exercise of impartial judgment, might have reached a different conclusion, then it was error for the trial judge to grant the motion and award damages. To maintain trust in the judicial system, the legal standards and law must be applied evenly, regardless of whether a verdict is in favor of plaintiffs or defendants. In this case, it was within the province of the jury to factor in the various inconsistencies in the testimony. The trial judge is not entitled to interfere with the verdict simply because he believes another result would be correct. See Davis v. Wal-Mart Stores, Inc., XXXX-XXXX, pp. 12-13 (La.11/28/00), 774 So.2d 84, 95.
Based on our review of the entire record, including the expert medical testimony and opinion, we must find that the trial court erred in granting the JNOV. Although we may also have found differently than the jury, neither this court nor the court below sat as the triers of fact. In this case, it was the jury's role to accept or reject the testimony of the various witnesses and experts, not the court's. The facts and inferences do not point so strongly and overwhelmingly in favor of Ms. Yohn that reasonable persons could not have found against her on the issue of damages. Specifically, considering all the evidence in the light most favorable to defendants, the jury could have reasonably found that the neck pain was minor, was not the impetus for the visits to the treating physicians in 1997, and was not the cause of the lost wages. The jury could also have reasonably found that the back pain reported to Dr. Rollette and Dr. Hontas stemmed from her pre-existing problem, and that the on-going problems were *586 the result of the years of pre-existing back pain and soreness, exacerbated by her decision to continue working in her prior strenuous job, as well as from degenerative changes. See Broussard v. Razden, 98-2576 & 2577, pp. 13-14 (La.App. 1 Cir. 12/28/99), 763 So.2d 644, 654 (jury's failure to award damages for future pain and suffering was reasonable based on evidence of prior medical history, intervening cause, and degenerative condition). As to the court's perceived absence of evidence of the pre-existing back problems and treatment, Ms. Yohn herself testified to her pain and treatment between 1993 and 1997. Thus, we reverse the JNOV and re-instate the jury verdict.

COSTS
In the April judgment rendered in conformance with the jury verdict, the trial judge assessed the court costs and expert fees solely to the defendants. While it is true that the court may assess costs in any equitable manner, the April judgment was primarily in favor of the defendants. See La. C.C.P. art.1920. Ms. Brandon was found to have caused the accident, but the accident was not found to be the cause of the damages sought. Under these particular circumstances, we find an assessment of all costs and fees to defendants was inequitable and an abuse of the trial court's discretion. See generally Broussard v. Razden, 98-2576 & 2577 at p. 16, 763 So.2d at 656; Smith v. Davill Petroleum Co., Inc., 97-1596 at p. 1, 744 So.2d at 32 (Kuhn, J., writing for a separate majority on the issue of court costs). Therefore, the award of fees and costs is amended. One-half of the costs and fees awarded in the April judgment is assessed to defendants and one-half to plaintiff.

FAILURE TO ACT ON MOTION FOR NEW TRIAL
When Ms. Yohn moved for a JNOV, she also filed an alternative motion for new trial. Although the trial court granted the JNOV, it did not act, directly or provisionally, on the motion for a new trial.
Louisiana Code of Civil Procedure article 1811 provides that a motion for new trial may be joined with a JNOV request, or made in the alternative. La. C.C.P. art. 1811 A(2). If the JNOV is granted, article 1811 requires the court to rule conditionally on the motion for new trial. La. C.C.P. art. 1811 C(1). Customarily, the first circuit has found that the failure to act on a pending motion for new trial retards the transfer of jurisdiction from the district court to the court of appeal. See La. C.C.P. arts. 2087 or 2123 and Petitto v. McMichael, 552 So.2d 790, 792 (La.App. 1 Cir.1989). Without jurisdiction, any review by this court would be premature. When a motion for new trial is made as an alternative to a motion for JNOV, but not acted on, the appeal is dismissed, and the case is remanded for action by the trial court on the pending motion for a new trial. Petitto v. McMichael, 552 So.2d at 792-93. However, in a longstanding case procedurally similar to the case before us, the Louisiana Supreme Court rejected a remand in the interest of justice for the parties, and for the sake of judicial economy. Specifically, the supreme court stated: "Because we have previously concluded that the jury's verdict is reasonable in light of the evidence presented, we find that plaintiffs are not entitled to a new trial." VaSalle v. Wal-Mart Stores, Inc., XXXX-XXXX, p. 18 (La.11/28/01), 801 So.2d 331, 342. Apparently, the supreme court reasoned that if the JNOV was erroneously granted in the face of a reasonable jury verdict, a ruling on the motion for new trial was unnecessary or moot. See Sledge v. Continental Casualty Company, 26,472, p. 1 (dissent) (La.App. 2 Cir. 1/25/95), 654 *587 So.2d 358, 365 (on rehearing, Hightower, J. dissenting) (If the jury verdict is reasonable and well founded in the law, no real basis for a new trial exists). Additionally, the supreme court must have found that jurisdiction was not delayed by the open motion for a new trial and that jurisdiction had transferred to the supreme court. Otherwise, the court would not have had jurisdiction to review the JNOV, and thereafter reach the issue of the still pending motion for new trial. For these reasons, and based on the same procedural facts in both this longstanding case and VaSalle, we reject remand in favor of justice and judicial economy. As with the supreme court in VaSalle, we have "concluded that the jury's verdict is reasonable in light of the evidence presented," and that the plaintiff was "not entitled to a new trial." VaSalle v. Wal-Mart Stores, Inc., XXXX-XXXX at p. 18, 801 So.2d at 342.
For these reasons, we reverse the JNOV, and reinstate the jury verdict as amended to reflect the re-apportionment of the trial costs. The costs of the appeal are assessed to plaintiff-appellee, Ms. Yohn.
JNOV REVERSED; JURY VERDICT RE-INSTATED, AS AMENDED.
NOTES
[1] On some pleadings, Ms. Yohn is referred to as Elizabeth Yohn Bonck. On her petition and at trial, she identified herself as Elizabeth Yohn.