MALCOLM R. HOLMES, JR.
v.
ROBERT L. HICKS, JR. and FINANCIAL INDEMINITY COMPANY.
No. 2009 CA 0343
Court of Appeals of Louisiana, First Circuit.
October 23, 2009.
Not Designated for Publication
JAY JONES HARRIS, Counsel for Plaintiff Malcolm R. Holmes, Jr.
BRIAN K. ABELS, Counsel for Plaintiffs in Reconvention/Appellees, Robert L. Hicks, Jr. and Financial Indemnity Company.
DEANNE V. MURREY, Counsel for Defendant in Reconvention/Appellant, Allstate Insurance Company.
Before HIPPLE, HUGHES, and WELCH, JJ.
HUGHES, J.
This is an appeal of a judgment of the 19th Judicial District Court finding in favor of the plaintiff in reconvention/appellee, Robert L. Hicks, Jr., for damages for a neck injury he sustained in an automobile accident. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
This suit arises from an automobile accident that occurred on July 15, 2004, involving Malcolm R. Holmes, Jr. and Robert L. Hicks, Jr. Although Mr. Holmes originally filed suit against Mr. Hicks, alleging that Mr. Hicks was at fault in the accident, the trial court determined via summary judgment that no fault was attributable to Mr. Hicks. By way of reconventional demand, Mr. Hicks sought damages against Mr. Holmes and Mr. Holmes's insurer, Allstate Insurance Company (Allstate) for a neck injury that he claimed resulted from that accident.
After a bench trial, in a judgment signed on January 6, 2009, the trial court granted Mr. Hicks an award of $14,000. Allstate now appeals, assigning error to the trial court's determination that Mr. Hicks's neck injury was caused by the accident with Mr. Holmes, and alternatively, that the damages awarded were excessive. Mr. Hicks answered the appeal urging that the award of $14,000 be increased to $25,000.

APPLICABLE LAW
In an action to recover damages for injuries allegedly caused by another's negligence, the plaintiff has the burden of proving causation by a preponderance of the evidence and that burden has been met when the entirety of the evidence, both direct and circumstantial, shows the fact or causation sought to be proved is more probable than not. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621, 626 (1972); Short v. Plantation Management Corporation, XXXX-XXXX (La. App. 1 Cir. 12/27/00), 781 So.2d 46.[1] The plaintiff does not have to exclude all other possible explanations for his injuries, because the standard is not proof beyond a reasonable doubt. Short v. Plantation Management Corporation, XXXX-XXXX at p. 9, 781 So.2d 46, 54; Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654, 664 (La. 1989).
Before an appellate court may upset a trial court's finding on causation, it must find that the trial court's factual findings were manifestly erroneous or clearly wrong. Ferrell v. Fireman's Fund Insurance Co., 94-1252 pp. 3-4 (La. 2/20/95), 650 So.2d 742, 745. In order to reverse a factfinder's determination, two things must happen: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the trial court's finding, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993); see also Mart v. Hill, 505 So.2d 1120, 1127 (La. 1987). Thus, the issue to be resolved by a reviewing court is not whether the trier-of-fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882. Where factual findings are based on determinations regarding the credibility of witnesses, the trier-of-fact's findings demand great deference. Boudreaux v. Jeff, XXXX-XXXX, p. 9 (La. App. 1 Cir. 9/17/04), 884 So.2d 665, 671; Secret Cove, L.L.C. v. Thomas, 2002-2498, p. 6 (La. App. 1 Cir. 11/7/03), 862 So.2d 1010, 1016, writ denied, XXXX-XXXX (La. 4/2/04), 869 So.2d 889. Even though an appellate court may feel that its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989); see also Cannet v. Franklynn Pest Control Company, Inc., 08-56 (La. App. 5th Cir. 4/29/08), 985 So.2d 270.

MEDICAL HISTORY
Mr. Hicks's medical records were introduced and filed into the record at the trial of this matter without objection. It is undisputed that Mr. Hicks suffered a fracture to his neck at the C-2 level as a result of a 2003 automobile accident. The medical records of his treating physician, Dr. Fraser Landreneau, a neurological surgeon at The Neuromedical Center, indicate that Mr. Hicks was placed into a halo vest for stabilization for a period of approximately two months for that injury. After the halo vest was removed, Mr. Hicks wore a soft neck collar for an additional six weeks. But by January of 2004 Mr. Hicks was fully recovered, reporting no pain, and was released to full work duty by Dr. Landreneau. Moreover, as a result of that injury, Mr. Hicks underwent several diagnostic tests. The record contains radiology reports dated August 8, 2003, October 31, 2003, and January 23, 2004; a cervical spine survey report dated September 17, 2003; and an MRI report dated September 15, 2003. Notably, none of those reports show any abnormality at the C4-5 level.[2]
In July of 2004, Mr. Hicks was involved in the accident with Mr. Holmes. Mr. Hicks testified that approximately two weeks after the accident he began experiencing pain in his neck. The medical records indicate that on June 6, 2005, 11 months after the July 2004 accident, Mr. Hicks returned to Dr. Landreneau complaining of "worsening neck pain." Dr. Landreneau ordered x-rays and an MRI. Mr. Hicks was prescribed Medrol, placed in a soft neck collar, and put on work and driving restriction with orders to return. The MRI report revealed a disc bulge at the C4-5 level. The report also noted that the "old fracture" at the C2 level was "well healed" and "normally aligned." Mr. Hicks returned to Dr. Landreneau on June 22, 2005 at which time he was ordered to follow up as needed and released back to full work duty. At the time of the trial Mr. Hicks stated that he continued to suffer from pain in his neck, but that he was able to work.
In support of its argument that Mr. Hicks failed to establish that his injury was caused by the accident with its insured, Allstate relies upon Mr. Hicks's admission to a subsequent accident in December 2005 and Mr. Hicks's failure to report the July 2004 accident to his psychotherapists.[3] At the trial, Mr. Hicks acknowledged that he indeed hydroplaned off the roadway around Christmas of 2005, but testified that he was not injured in that accident and that his truck was only "scratched." Further, Mr. Hicks explained that he did not report the automobile accident with Mr. Holmes to Drs. Sura, Bolter, or Rogers because "I wouldn't have any reason to" since he felt that their treatment of him was limited to his anxiety and/or depression and that he returned to Dr. Landreneau for treatment for his neck. We note that no medical evidence from the December 2005 accident was introduced by Allstate. The trial court obviously found Mr. Hicks to be a credible witness, and was persuaded by his testimony, coupled with the medical evidence introduced.
After a thorough review of the record, we are unable to say that the trial court committed manifest error or was clearly wrong in finding that the bulging disc in Mr. Hicks's neck at the C4-5 level was caused by the July 2004 accident. An MRI report dated less than five months prior to the accident establishes that there was no disc injury at the C4-5 level. Mr. Hicks states that he experienced no pain in his neck from January before the accident until a few weeks after the accident. According to his uncontradicted testimony, that pain became increasingly worse and he eventually returned to the doctor for treatment. The MRI performed at that time revealed the bulging disc at the C4-5 level.

DAMAGES
While Allstate argues that the damage award of $14,000 is abusively high, Mr. Hicks answered the appeal, arguing that the award is abusively low. In reviewing an award of general damages, this court is limited to a review for abuse of the trier of fact's vast discretion. Because of the great discretion vested in the trier of fact, an award of general damages should rarely be disturbed on appeal. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993), cert denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Smith v. Goetzman, XXXX-XXXX, p. 14 (La. App. 1 Cir. 9/25/98), 720 So.2d 39, 47. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that an appellate court should reduce or increase the award. Id.
Mr. Hicks testified that a few weeks following this accident, he began to feel pain in his neck. He testified that he continues to feel pain in his neck and that the disc impairment "interferes" with his ability to do his job as a boilermaker, although he does work. He explained that he is unable to fall asleep because different positions "aggravate" his neck and he is unable to take pain medication because he is "allergic" to such medications. After review of the jurisprudence and facts of this case, we do not find that the trial court abused its vast discretion in rendering this award.

CONCLUSION
The judgment of the trial court is affirmed. All costs of this appeal are assessed against appellant, Allstate.
AFFIRMED.
WELCH, J., DISSENTING.
I respectfully disagree with the majority opinion in this case. I believe that the trial court's factual finding that Mr. Hicks's neck injury was caused by the July 14, 2004 automobile accident is manifestly erroneous. In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and the injuries complained of. American Motorist Insurance Company v. American Rent-All, Inc., 579 So.2d 429, 433 (La. 1991). The plaintiff must prove causation by a preponderance of the evidence. Maranto v. Goodyear Tire & Rubber Co., 94-2603, 94-2615, p. 3 (La. 2/20/95), 650 So.2d 757, 759. The test for proving the causal relationship between the accident and the subsequent injury is whether the plaintiff proved, through medical testimony (or evidence), that it is more probable than not that the injuries were caused by the accident. Id. It follows that speculation, conjecture, mere possibility, and even unsupported probabilities are not sufficient to prove a plaintiffs claim. Hebert v. Rapides Parish Police Jury, XXXX-XXXX, 2006-2164, p. 8 (La. 4/11/07), 974 So.2d 635, 642.
According to the evidence in the record, Mr. Hicks was involved in a prior motor vehicle accident approximately one year before the accident at issue, wherein he sustained a traumatic fracture in the cervical spinespecifically at the C2 level. Dr. Frasier Landreneau treated him for this injury by placing him in a halo vest. While under the care of Dr. Landreneau and while still wearing the halo, Mr. Hicks fell off a bar stool. In early 2004, after Mr. Hicks's cervical fracture had resolved, he was released to work by Dr. Landreneau.
After Mr. Hicks was involved in the July 14, 2004 motor vehicle accident, he did not return to see Dr. Landreneau until June 6, 2005, almost eleven months later. Notably, when Mr. Hicks returned to Dr. Landreneau in June 2005, he never even mentioned the July 14, 2004 accident at issue. Nor did he mention the accident in the interim to any of his treating psychiatrists or psychologists, who were treating him for several other conditions. According to Dr. Landreneau's progress notes for June 6, 2005, Mr. Hicks was "having worsening arm pain, numbness, dysesthesia and unsure if it is the right fourth finger. He has worsening neck pain and has a past history of cervical fracture." No reference was made to the July 2004 accident, much less, whether his current complaint of neck pain was related to the July 2004 accident. Additionally, on June 6, 2005, Dr. Landreneau requested an MRI be performed. This MRI indicated that at the C4-5 level, there was some mild disc bulging causing ventral flattening of the thecal sac with no central or foramen stenosis. However, this condition was not related by any medical testimony or evidence to the accident at issue. Mr. Hicks returned, for the last time, to see Dr. Landreneau on June 22, 2005. According to that progress note, Mr. Hicks was being treated for "C-2 fracture and degenerative disc disease and cervicalgia ... his C-2 fracture has healed. I will give him a full work release and he will follow up as needed." Again, there was no mention of the July 2004 accident or whether any of the conditions Mr. Hicks was being treated for were related to that accident.
I do not believe that the evidence offered by Mr. Hicks was sufficient to establish that it was more probable than not that Mr. Hicks's neck condition was caused by the July 14, 2004 accident, and therefore, Mr. Hicks's failed to discharge his burden of proving causation. Given this lack of evidence concerning causation, no trier of fact could reasonably conclude that Mr. Hicks was entitled to damages for his neck condition, and therefore, I would reverse the judgment of the trial court.
Thus, I respectfully dissent.
NOTES
[1] We note that some opinions seem to imply that plaintiff may only meet this burden through "medical testimony." See Yohn v. Brandon, XXXX-XXXX (La. App. 1 Cir. 9/27/02), 835 So.2d 580, 584, writ denied, 2002-2592, (La. 12/13/02), 831 So.2d 989. However, as noted above, causation is not proven exclusively through expert medical testimony, but can also be proven simply through "medical evidence" so long as the evidence presented by plaintiff amounts to a preponderance. See Cannet v. Franklynn Pest Control Company, Inc., 08-56 (La. App. 5 Cir. 4/29/08), 985 So.2d 270, 276.
[2] Although Allstate points out at trial that Mr. Hicks fell off of a stool in a barroom while he had the halo on, we note that the fall was prior to Mr. Hicks's release to full work duty, his reports of zero pain, and the January 2004 radiology report showing no disc bulge at C4-5.
[3] The medical records introduced reveal that Mr. Hicks suffers from anxiety and depression. Both before and after this accident, Mr. Hicks treated with Drs. Sura, Bolter, and Rogers for those issues.