PETTIGREW, J.
LThis lawsuit arises out of a motor-vehicle accident. The parties stipulated that the defendant driver was solely at fault in causing the accident. ■ Thus, the only issues at the trial on the merits were *123 the extent of plaintiffs’ injuries caused -by the accident and damages. After a jury trial, the jury awarded plaintiffs $51,704.39 in general and special damages. Plaintiffs have appealed. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On September 18, 2007, plaintiff, Sheila Tate, was traveling northbound in the left lane on Scenic Highway. In the vehicle with Ms. Tate were Jordan Tate, Ms. Tate’s minor child, Joyce Lee, and Imiricle Lee, Ms. Lee’s minor child. As Ms. Tate approached the intersection of Scenic Highway and 68th Avenue, a vehicle owned by the City of Baton Rouge and driven by Baton Rouge Police Officer Eric Kenny was traveling on 68th Avenue and also approaching the intersection. Officer Kenny failed to yield to Ms. Tate’s vehicle, causing a collision between the two vehicles. On December 5, 2007, Ms. Tate, individually and on behalf of Jordan Tate, and Ms. Lee, individually and on behalf of Imiricle' Lee (sometimes collectively referred to as plaintiffs), filed suit for damages resulting from the accident, naming as defendants Officer Kenny and the City of Baton Rouge.
Prior to the trial on the merits, the City of! Baton Rouge stipulated ' that. Officer Kenny was in the course and scope of his employment with the Baton Rouge Police Department at the time of the accident and that his fault caused the accident. A jury trial was conducted on April 22-26, 2013, at which time the issues of causation of plaintiffs’ injuries, and the nature and extent thereof, were strongly contested. The jury heard from numerous lay and expert witnesses.
After hearing and considering'all of the testimony and documentary evidence, the jury found that 'the September’ 18, 2007 accident had caused injuries and damages to ^plaintiffs and awarded the following damages:
Sheila Tate
Past Medical Expenses $33,116.19
Future Medical Expenses $0
Mental and Physical Pain and Suffering Past, Present and Future $7,500.00
Loss of Enjoyment of Life $0
Past Lost Wages $8,400.00
Future Lost Wages $0 '
TOTAL: $49,016.19
Sheila Tate on behalf of Jordan Tate
Past Medical Expenses ; $59.60
Mental and Physical Pain and Suffering Past, Present and Future in
TOTAL: $59.60
Joyce Lee
Past Medical Expenses $2,069.60
Mental and Physical Pain and Suffering Past, Present and Future $500.00
Loss of Enjoyment of Life $0
TOTAL: $2,569.60
Joyce Lee on behalf of Imiricle Lee
Past Medical Expenses $59.60
Mental and Physical Pain and Suffering Past, Present and Future $0
TOTAL: ■ . . $59.60
*124 A written judgment in accordance with the jury’s verdict was signed on May 13, 2013.[1] Thereafter, plaintiffs filed a motion for judgment notwithstanding the verdict arguing that the damage award was too low. The matter was set for hearing and, after considering the arguments of plaintiffs’ counsel, the trial court denied the motion for judgment notwithstanding the verdict, stating:
The court finds that the verdict by the jury is one that reasonable minds could concur [in], and it is not unreasonable, in light of the law as well as the evidence that was presented to the trier of fact; therefore, the court will not disturb the findings of the jury, and the court’s going to deny the J.N.O.V.
|4A judgment was signed accordingly on September 29, 2013. Plaintiffs then filed the instant appeal, assigning the following as error:
1. Jury was manifestly erroneous in inadequately awarding Sheila Tate the full amount of past medical expenses.
2. Jury was manifestly erroneous in not awarding Sheila Tate future medical expenses.
3. Jury was manifestly erroneous in inadequately awarding Sheila Tate the full amount of lost wages.
4. Jury was manifestly erroneous in not awarding Sheila Tate future loss of earning capacity.
5. Jury abused its discretion when awarding Sheila Tate a woefully inadequate amount of general damages.
6. Jury was legally erroneous in awarding Jordan Tate and [Imiricle] Lee special damages but no general damages.
7.Jury abused its discretion in awarding Joyce Lee a woefully inadequate amount of general damages.
DISCUSSION

Sheila Tate

Ms, Tate testified that as a result of this accident, she sustained injuries to her lower back and shoulder and was initially off of work for about two-and-a-half months. When she returned to her job as a truck driver, the duties she performed before the accident were more difficult at first because of the pain she was experiencing. And she was unable to take the prescribed medication because of its sedative effects. She indicated that most of her pain was in her lower back and buttocks area, with pain radiating down her right leg and into her right knee. She described the pain as being “like a toothache,” and added that not every day was a painful day. Ms. Tate stated that before the accident, she was more of an “outdoor person” and that she and her daughter used to jump on the trampoline together and that they enjoyed riding horses together. She acknowledged that although she does have some good days where her pain is only at a level of a two or three, she knows what those types of activities will do to her pain level so she avoids them.
| ¿Immediately following the accident in question, Ms. Tate denied any back pain when examined by EMS workers on the scene. The only complaint noted on the EMS record was neck pain. It was only later that day when Ms. Tate drove herself and Jordan to the Baton Rouge General ER that she complained of back, neck, and right shoulder pain. However, no signs of *125 trauma were noted and no x-rays or other diagnostic exams were performed by hospital personnel.
Ms. Tate began treating with Dr. Keith Mack two days after the accident with complaints of headaches, jaw pain, neck pain, back pain, and shoulder pain. Dr. Mack diagnbsed Ms. Tate with a “[mjuscu-loligamentous strain” of the cervical spine, thoracic spine, and lumbar spine, and recommended “[pjhysical medicine treatments” three times a week. Dr. Mack treated Ms. Tate for approximately six months, during which time she underwent conservative treatment including prescription medications, massage, electronic stimulation, ultrasound, and moist heat/cold packs.
Dr. Mack referred Ms. Tate to Dr. Allen Johnston in March 2008, who ordered physical therapy and administered three steroid injections, which provided temporary relief of her pain. Dr. Johnston was of the opinion that Ms. Tate would benefit from radiofrequency ablation neurotomy of the L3, L4, and L5 medial branches. However, according to Ms. Tate, she was unable to have that procedure because of financial reasons. . Although Dr. Johnston stopped treating Ms. Tate in May 2009, she returned in January 2013 and reported that she had been deemed completely disabled’ as a result of her injuries from the 2007 accident.
Ms. Tate began treating with Dr. Joseph Boucree in October 2010, when her insurance changed with her new job working at U.S. Agencies. Ms. Tate presented with complaints of back pain with leg radicular pain related to the 2007 accident. Dr. Boucree treated Ms. Tate with pain management, including a .course of physical therapy and two epidural steroid injections. Ms. Tate treated with Dr. Boucree through May 2011, at which time her back and leg pain was not resolved. Dr. Bou-cree opined that surgery may be necessary if Ms. Tate’s pain interfered with her quality of life and daily activities.
IfiDr. Yong Chen was tendered and accepted as an expert in the field of occupational medicine. Dr. Chen testified that he examined Ms. Tate in November 2007 as part of a recertification process for her return to work as a truck driver 'following the accident. Dr. Chen took Ms. Tate’s history and performed a physical examination. He found no abnormalities and was satisfied that Ms. Tate could return to her previous job as a truck driver without restrictions. Dr. Chen indicated that Ms. Tate appeared to be a “pain free and fully functional woman.” During his testimony, Dr. Chen was asked to consider the findings of Ms. Tate’s other medical providers from the days before his exam and subsequent therétó, especially a note from Dr. Mack the ■ day before Dr. Chen’s exam, wherein Dr. Mack noted that Ms. Tate was complaining of neck, back, and shoulder pain, and numbness and tingling in her right leg. Dr. Chen simply stated, “I’m [a] little confused. • If she has such serious symptoms the day before, how could — how could that disappear on my examination? ... I’m. so curious — curious. It seems to me like two different [people] represent herself.” Dr.. Chen maintained his position that had Ms. Tate exhibited-any symptoms related to the September 2007 accident, he would not .have certified her to return to work..
Dr. Richard ■ Robiehaux - was tendered and' accepted as an expert in the field of orthopedic surgery. Dr. Robiehaux was hired by the defense to perform an independent medical examination of Ms. Tate in June 2010. Dr. Robiehaux testified that he had reviewed all of Ms. Tate’s medical records and had also physically examined Ms. Tate. Dr, Robiehaux opined that Ms. Tate had Sustained merely a muscle strain *126 of her lower back and that this type of injury typically heals. itself after two or three months. Dr. Robichaux noted that when Ms. Tate was initially evaluated in the emergency room following the accident, the doctors there did not find anything significantly wrong with her and did not even order any x-rays. He also acknowledged that Dr. Yong Chen’s physical examination of Ms. Tate in November 2007 was negative. Dr. Robichaux concluded that any injury Ms. Tate may have suffered in the 2007 accident was resolved by the time he examined her in June 2010. He added that any pain she experienced thereafter was not the result |7of the accident but, rather, caused by degenerative disc disease, which would only worsen as she aged.

Joyce Lee

According to the record, Ms. Lee was offered assistance at the scene of the accident by EMS workers for her left knee pain but declined to be transported to the hospital by an ambulance. Later that same day, a friend took Ms. Lee and her daughter, • Imiricle, to the Baton Rouge General ER to be checked. There were no x-rays taken, but Ms. Lee complained of chest discomfort, and left shoulder and left knee discomfort. She was given anti-inflammatory medication and a prescription for pain medicine.
Two days later, Ms. Lee saw Dr. Mack with similar complaints related to the accident. Dr. Mack advised Ms. Lee to continue taking the medications that she had been prescribed at the hospital and to come to his office three times a week for physical medicine treatments. He also ordered x-rays of the chest, left shoulder, and left knee. Dr. Mack explained that physical medicine treatments consisted of hot and cold packs, light massage, ultrasound, wax treatments, which are all treatments intended to increase blood flow to a bruised or strained muscle to stimulate healing. Ms. Lee did not go three times a week as prescribed by Dr. Mack. However, she did receive fourteen physical medicine treatments from Dr. Mack during the time that he treated her.
Ms. Lee testified that she had pain in her chest when Dr. Mack pushed on it and that her kneecap hurt when Dr. Mack would move it back and forth. Concerning her leg, Ms. Lee indicated that the front of her leg hurt all the time. Consistent with Dr. Mack’s testimony regarding the physical medicine treatments he administered to Ms. Lee, she stated that these treatments consisted of Dr. Mack putting a heating pad on her leg for approximately thirty minutes. However, Ms. Lee admitted, she never tried using a heating pad at home to help with her leg pain. Ms. Lee saw Dr. Mack for the last time in March 2008, ■ at which time she denied any knee, shoulder, or chest pain. Her physical exam was normal, and she was discharged with the option to return as needed.
1 pjordan Tate/Imiricle Lee
Jordan Táte was two years old at the time of the accident. Ms. Tate testified that although Jordan was not injured in the accident, she took Jordan with her to the Baton Rouge General ER to have her examined because she was crying and “hollering and stuff.” According to Ms. Tate, hospital personnel told her Jordan was “fine.” Jordan did not receive any other treatment -in connection with this accident. The bill from the hospital was $59.60.
Imiricle Lee was about five months old at the time óf the accident. Ms, Lee testified that after the accident, she took Imiri-cle to the Baton Rouge General ER for an examination and was told that Imiricle was “fine.” She too was assessed a bill of $59.60 for this visit. Ms. Lee added that Imiricle was very irritable for about a week, but that after that, she had no more problems.

*127
Standard of Review

It is well-settled that a judge or jury is given great discretion in its assessment of quantum for both general and special damages. Guillory v. Lee, 2009-0075, p. 14 (La.6/26/09), 16 So.3d 1104, 1116. Louisiana Civil Code article 2324.1 provides; “In the assessment of damages in cases of offenses, quasi offenses, and. quasi contracts, much discretion must be left to the judge or jury.” Furthermore; the jury’s assessment of quantum or determination of the appropriate amount of damages is a determination of fact that is entitled to great deference on appeal. Wainwright v. Fontenot, 2000-0492, p. 6 (La. 10/17/00), 774 So.2d 70, 74. An appellate court, on review, must be cautious not •to re-weigh the evidence or to substitute its own factual 'finding just because it would have decided the .case differently. Guillory, 2009-0075 at 15, 16 So.3d at im.
In a personal injury suit, the plaintiff bears the burden of- proving the causal connection between an accident and the resulting injuries. Oden v. Gales, 2006-0946, p. 6 (La.App. 1 Cir. 3/23/07), 960 So.2d 114, 118. Whether the accident caused the plaintiffs injuries is a factual question that should not be reversed on appeal absent |flmanifest error. Pena v. Delchamps, Inc., 2006-0364, p. 10 (La.App. 1- Cir. 3/28/07), 960 So.2d 988, 994, unit denied, 2007-0875 (La.6/22/07), 959 So.2d 498.
With these principles in mind, we review the evidence of record to determine whether the jury’s damage awards are contrary to the evidence or constitute an abuse of the broad discretion afforded to the jury.

Past and Future Medical Expenses (Assignments of Error Nos. 1 and 2)

Plaintiffs argue on appeal that based on the evidence presented, the jury was manifestly erroneous in not awarding Ms. Tate the full amount of her past medical expenses and in not awarding Ms. Tate any future medical expenses. Plaintiffs contend that this court should increase the jury award to Ms. -Tate for past medical expenses from $33,116.19 to- $42,534.59 and that an appropriate amount for future medical expenses should be awarded to Ms. Tate based on the testimony of Drs. Johnston and Boucree.
A tort victim may ordinarily recover medical expenses, past and future, that he incurs as a result of an injury. Menard v. Lafayette Ins. Co., 2009-1869, p. 12 (La.3/16/10), 31 So.3d 996, 1006. However, the plaintiff must prove, by a preponderance of the evidence, the existence of the injuries and a causal connection between the injuries and the accident. See Yohn v. Brandon, 2001-1896, p. 6 (La. App. 1 Cir. 9/27/02), 835 So.2d 580, 584, writ denied, 2002-2592 (La,12/13/02), 831 So.2d 989. The test to determine- if that burden has been met is whether’the plaintiff has established through medical testimony that it is more probable than not that the injuries were caused by the accident. Id.
A plaintiff must show the probability of future medical expenses with supporting medical testimony and estimations of their probable cost. Importantly, future medical expenses must be established with some degree of certainty. The proper standard for determining whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence that the future medical expense will be medically necessary. Menard, 2009-1869 at 12-13, 31 So.3d at 1006.
| ^Generally, the effect .and weight to be given medical expert testimony is within the broad discretion of the fact finder. Yohn, 2001-1896 at 7, 835 So.2d at 584. A trier of fact may accept or reject, *128 in whole or in part, the opinions expressed by an expert. Harris v. State, Department of Transportation and Development, 2007-1566, p. 25 (La.App. 1 Cir. 11/10/08), 997 So.2d 849, 866, writ denied, 2008-2886 (La. 2/6/09), 999 So.2d 785. Further, where the testimony of expert witnesses differs, the trier of fact has great, even vast, discretion in determining the credibility of the evidence, ,and a finding in this regard will not be overturned unless it is clearly wrong. Cotton v. State Farm Mut. Auto. Ins. Co., 2010-1609, pp. 7-8 (La.App. 1 Cir. 5/6/11), 65 So.3d 213, 220, writ denied, 2011-1084 (La.9/2/11), 68 So.3d 522.
A tortfeasor is liable only for damages caused by his negligence; he is not liable for damages caused by separate, independent, or intervening causes. Hence, plaintiff herein had the burden of proving that her injuries were not the result of such separate, independent or intervening causes. Yohn, 2001-1896 at 7, 835 So.2d at 584. The trier of fact’s causation finding is a factual determination that may not be set aside on appeal in the absence of manifest error. Short v. Plantation Management Corporation, 99-0899, p. 9 (La.App. 1 Cir. 12/27/00), 781 So.2d 46, 55.
On review, we first observe that the record overwhelmingly demonstrates that the jury was faced with differing views concerning the extent.of Ms, Tate’s back pain, and that in reaching its verdict, the jury was ultimately required to do so based on the evaluation of conflicting expert testimony and the determination of the credibility of the witnesses. The evidence in the record, including Ms. Tate’s medical treatment history, supports a finding that not all of the medical expenses incurred by Ms, Tate were causally related to the September 2007 accident. This finding is not clearly wrong, as the medical testimony establishes Ms. Tate’s persistent pain some three years after the accident could have resulted from some other cause, such as age-related degeneration. Mindful that a plaintiff must, prove, by a preponderance of the evidence, the existence of the injuries and a causal connection between the injuries and the accident at issue, we find no manifest error in the jury’s determination that the plaintiff failed to establish |na causal relationship between the accident and all of the injuries for which she sought recovery herein. Thus, the $33,116.19 in past medical expenses is consistent with a finding that Ms. Tate suffered an injury in the accident, but was not entitled to recover all of her requested expenses.
Similarly, with respect to future medical expenses, the jury was faced with conflicting medical testimqny concerning whether Ms. Tate would require some medical treatment in the future as a result of this accident. In refusing to award Ms. Tate future medical expenses, the jury obviously concluded that Ms. Tate’s injuries from the accident were resolved within a relatively short period of time after the accident and that any pain she continued to experience was the result of degenera-' five conditions unrelated to the accident. Based on our review of the entire record, we are satisfied that there is a reasonable factual basis in the record to support the jury’s findings. Therefore, we cannot say the jury was manifestly erroneous in not awarding Ms. Tate future medical expenses. Accordingly, assignments of error numbers one and two are without merit.

Past Lost Wages and Future Loss of Earning Capacity (Assignments of Error Nos. 3 and 4)

Plaintiffs next contend that the jury abused its discretion in awarding Ms. Tate an inadequate amount for her past lost wages and in not awarding her anything for future loss of earning capacity. Plaintiffs argue that Ms. Tate’s award for past *129 lost wages should have been no less than $32,686.90 as determined by Pamela Lawrence (payroll administrator from Ms.. Tate’s previous employer) from September 18, 2007 to December 2009, and no greater than $129,533.00, as determined by Dr. Randolph Rice. According to the record, the jury awarded Ms. Tate $8,400.00 in past lost wages, an amount defendants point to as representative of Ms. Tate’s actual wage losses in the year 2007, and declined to award Ms. Tate any damages for future loss of earning capacity.
A plaintiff seeking damages for lost wages bears the burden of proving lost earnings, as well as the duration of time missed from work due to the accident. Brown |12¾. City of Madisonville, 2007-2104, p. 17 (La.App. 1 Cir. 11/24/08), 5 So.3d 874, 887, writ denied, 2008-2987 (La.2/20/09), 1 So.3d 498. The jury has broad discretion in assessing awards for lost wages, but there must be a factual basis in the record for the award. Driscoll v. Stucker, 2004-0589, p. 29 (La.1/19/05), 893 So.2d 32, 53. Where there is no basis for a precise mathematical calculation of a lost wage claim, the trier of fact can award a reasonable amount of damages without abusing its discretion. Burrell v. Williams, 2005-1625, p. 10 (La.App. 1 Cir. 6/9/06), 938 So.2d 694, 701.
Factors to consider in fixing awards for loss of earning capacity include: age, life expectancy, work life expectancy, appropriate discount rate, the annual wage rate increase, prospects for rehabilitation, probable future earning capacity, loss of earning ability, and the inflation factor or decreasing purchasing power of the applicable currency. Thibodeaux v. USAA Cas. Ins. Co., 93-2238, p. 16 (La.App. 1 Cir. 11/10/94), 647 So.2d 351, 361. Awards for lost future income are intrinsically insusceptible of mathematical exactitude, and as such, the trier of fact must exhibit sound discretion in rendering awards that are consistent with the record and do not impose a hardship upon either party. American Cent. Ins. Co. v. Terex Crane, 2003-0279, p. 8 (La.App. 1 Cir. 11/7/03), 861 So.2d 228, 234, writ denied, 2004-0327 (La.4/2/04), 869 So.2d 881.
We have thoroughly reviewed the record concerning Ms. Tate’s work history, including the testimony of Dr. Rice and the testimony of Dr. Chen as noted above. As previously indicated, Ms. Tate’s payroll records indicate that she only missed work from the date of the accident through November 29, 2007, and had $8,367.48 in lost wages.[2] Thereafter, she returned to work as a truck driver and continued in that job throughout 1132008 without any lost wages. As argued by defendants on appeal, the fact that Ms. Tate was able to maintain her physically demanding job as a truck driver for this duration “lends credibility to the testimony of Drs. Chen and Robichaux that her medical issues had resolved by the time that she returned to work.” We conclude that the jury did not abuse its discretion in awarding $8,400.00 in past lost wages as there is a reasonable factual basis in the record for said award.
Similarly, we find no merit to plaintiffs’ arguments regarding the jury’s decision not to award Ms. Tate any dam *130 ages for future loss of earning capacity. The record is replete with evidence that supports a finding that the injuries Ms. Tate suffered in the September 2007 accident were of a soft tissue nature and had resolved within a few months of the accident. Moreover, there is no evidence in the record that directly relates the injuries Ms. Tate received in the September 2007 accident to the fact that she was unable to obtain gainful employment some four years after the accident.
■ Although Michael Prenzel, who was accepted by the trial court as an expert in the field of rehabilitation counseling, and Stephanie Chalfin, who was accepted by the trial court as án expert in the field of vocation rehabilitation counseling, both testified that Ms. Tate would not be fit to return to her previous job as a truck driver, they both also acknowledged that she had transferable skills that she could utilize in different jobs that were more sedentary in nature and more conducive to her injuries. In fact,'Ms. Chalfin testified that Ms. Tate had worked a desk job at U.S. Agencies from January 2010 until July 2011 and that Ms. Tate had resigned from that job only because she believed she had another job waiting. At the time of trial, Ms. Tate indicated that she had not worked since July 2011 and that she quit her job at U.S. Agencies because she was disabled. She added, however, that she would like to return to work in order that she could better care for her daughter,
After carefully considering the record herein, we find that the jury’s conclusion is supported by the evidence. Thus, we are unable to say the jury abused its discretion in refusing to award Ms. Tate damages for future loss of earning capacity. These assignments of error lack merit.
| uGeneral Damages (Assignments of Error Nos. 5, 6, and 7)
Finally, plaintiffs assert three assignments of error concerning the amount awarded for general damages. Plaintiffs contend that: 1) the award of $7,500.00 to Ms. Tate for mental and physical pain and suffering past, present, and future was woefully inadequate considering her injuries, and Ms.’ Tate should have been awarded damages for loss of enjoyment of life; 2) the jury legally erred in awarding Jordán'Tate ¿nd Imiricle Lee special damages but no general damages; and 3) the award of $500.00 to Ms. Lee for mental and physical pain and suffering past, present, and future for a six-month injury without any compensation for loss of enjoyment of life is not acceptable in light of the sustained injuries.
The trier of fact is accorded much discretion in fixing general damage awards. La. Civ.Code art. 2324.1. The discretion vested in the trier of fact is great, even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The appellate court’s initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” .of the trier of fact. Youn, 623 So.2d at 1260. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to. the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn, 623 So.2d at 1261. General damages are those which are inherently speculative in nature and cannot be fixed with mathematical certainty, including damages for pain and suffering. 'Wainwright, 2000-0492 at 6, 774 So.2d at 74. The role of an *131 appellate court in reviewing a general damage award is not to decide what it considers to be an appropriate award, but rather, to review the exercise of discretion by the trier of fact. Bouquet v. Wal-Mart Stores, Inc., 2008-0309, p. 5 (La.4/4/08), 979 So.2d 456, 459.
hsThe Louisiana Supreme Court has held that a jury does not abuse its discretion in awarding medical expenses but no general damages when the medical expenses were incurred to determine whether injuries were in fact sustained. 'See Wainwright, 2000-0492 at 10, 774 So.2d at 77. In Wainwright, the jury awarded special damages for medical expenses of a hospital stay but did not award general damages. The court held that , the jury could have reasonably concluded that it was a reasonable precaution for prudent parents to place their minor son in the hospital for observation .after finding out that the defendant pharmacy had erroneously filled their son’s prescription, resulting in his ingestion of four times the medication prescribed for him. The supreme court found no abuse of the jury’s discretion in its award of medical expenses but failure to award general damages. Wainwright, 2000-0492 at 10-11, 774 So.2d at 77. The court held that “the particular facts of each case are ultimately determinative” as to whether awards for different elements of damages in personal injury cases are inconsistent, and that “there is no bright line rulé at work” in situations where special damages are awarded but no general damages are awarded. Wain-might, 2000-0492 at 8-9, 774 So.2d at 76.
In the instant case, the jury considered several days of testimony and documentary evidence that was introduced into the record. Based on our review of this testimony and evidence, we are unable to say that the jury abused its discretion in any of the general damage awards. The jury could have reasonably questioned the veracity of Ms. Tate and Ms. Lee regarding the source and extent of their injuries following the September 2007 accident and discounted their testimony. A reasonable factual basis exists in the record for the jury’s apparent conclusion that not all of the complaints by Ms. Tate and Ms. Lee were related to the accident. Given the evidence presented, we cannot say that the jury abused its discretion in awarding only $7,500.00 in general damages to Ms. Tate and $500.00 to Ms. Lee.
|1fiMoreover, based on the above cited jurisprudence, we find no abuse of discretion by the jury in awarding Jordan Tate and Imiricle Lee special damages but no general damages. Such a finding was well within the province of the jury. Thus, these assignments of error are without merit.
CONCLUSION
For the above and foregoing reasons, we affirm the trial court’s judgment in all respects. All costs associated with this appeal are assessed against plaintiffs-appellants. AFFIRMED. . .

. We note a discrepancy in the award of past medical expenses to Joyce Lee. The jury verdict form awards $2,069.60, but the trial court judgment awards $2,069.00. However, this portion of the judgment has not been appealed by plaintiffs.

. 2 According to the record, at the time of the accident, Ms. Tate was working as a truck driver for Pat Salmon Sons. Following the September 2007 accident, she missed work from September 20 through November 29. There is an attachment to Pamela Lawrence’s deposition that contains the following statement: "I Pam Lawrence stated, that Ms. Tate[’]s loss wages for 2007 was 8367.48[,] Ms. Tate[']s loss wages for 2007 should be 8113.92.” There is no explanation in the record as to why this corrected amount was not presented to the jury as Ms. Tate’s actual past lost wages. Nonetheless, we simply note this discrepancy as neither party has raised same as an issue on appeal.