## NOT DESIGNATED FOR PUBLICATION

### STATE OF LOUISIANA

### COURT OF APPEAL

### FIRST CIRCUIT

### 2019 CA 0565

### CEDRIC HOWARD

### VERSUS

### FRANK D. NORTON, BATON ROUGE POLICE DEPARTMENT, CITY OF BATON ROUGE, PARISH OF EAST BATON ROUGE

*DATE OF JUDGMENT:*     **JUN 1 2 2020**

ON APPEAL FROM THE NINETEENTH JUDICIAL DISTRICT COURT
NUMBER 622507, SECTION 24, PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

HONORABLE R. MICHAEL CALDWELL, JUDGE

\* \* \* \* \* \*

Stephen M. Alexander
Baton Rouge, Louisiana

Charles S. Lambert, Jr.
Baton Rouge, Louisiana

Anderson O. Dotson
Arlene C. Edwards
A. Gregory Rome

Davis S. Rhorer, Jr.
Gwendolyn K. Brown
Baton Rouge, Louisiana

Counsel for Plaintiff-2nd Appellant/
Appellee, Cedric Howard

Counsel for Defendants-Appellants/
Appellees, Frank D. Norton and City
of Baton Rouge/Parish of East Baton
Rouge

\* \* \* \* \* \*

BEFORE: THERIOT, CHUTZ, AND BURRIS,[1] JJ.

**Disposition: AFFIRMED, AS AMENDED.**

---

[1] Judge William J. Burris, retired, is serving *pro tempore* by special appointment of the Louisiana Supreme Court.

**CHUTZ, J.**

In this personal injury case, plaintiff appealed a jury verdict, alleging the damages he was awarded were abusively low. Defendants also appealed, alleging the jury awarded excessive damages. For the following reasons, we amend the award for past medical expenses, and affirm the judgment, as amended.

## FACT AND PROCEDURAL BACKGROUND

On June 24, 2012, Cedric Howard (plaintiff) was driving his vehicle westbound approaching the I-10 bridge in Baton Rouge, Louisiana. The traffic slowed before coming to a sudden stop. After Mr. Howard came to a complete stop, his vehicle was rear-ended by a police car driven by Baton Rouge City Police Officer Frank Norton, who was responding to a dispatch. Officer Norton testified he pressed the brakes to the floor, but his vehicle failed to stop in time. Both vehicles sustained only minor damage to their bumpers and were drivable after the accident.

Although plaintiff did not experience pain immediately after the accident, he began experiencing pain in his neck and back later that night. The following day, plaintiff did not go to work; he went to the emergency room at Ochsner's Hospital. He was diagnosed with a neck and back sprain. The next day, June 26, plaintiff began physical therapy for neck and back pain at Metropolitan Health Group, where he was treated until September 20.

On August 8, 2012, plaintiff had an MRI, which showed a herniation at L5-S1 and bulging at L4-L5. Plaintiff began treatments for lower back pain with a chiropractor, Dr. William Colgin, on September 26, 2012. After several months of treatment, Dr. Colgin referred plaintiff to Dr. Bobby Pervez for steroid injections. Plaintiff received three injections between November 19, 2012 and February 25, 2013. While the injections gave plaintiff substantial pain relief, the relief was short-lived.

2

Dr. Colgin released plaintiff to return to work, without restrictions, on February 4, 2013. Plaintiff returned to work as a sandblaster, the same work he had performed before the accident. Plaintiff described the work as requiring heavy lifting in handling the machine and hoses used in the job. He continued working in that job until he had lumbar surgery in February 2016. Plaintiff testified he worked with pain, but was able to work because his employer provided a helper to assist him. After returning to work, plaintiff continued to see Dr. Colgin regularly for several months, but thereafter saw Dr. Colgin only sporadically until his last visit in February 2016.

In March 2013, Dr. Pervez referred plaintiff to a surgeon, Dr. Anthony Maioriello. However, plaintiff did not consult with Dr. Maioriello for the first time until September 2014. After seeing Dr. Maioriello again in October 2014, plaintiff did not return for another visit until April 2015. Dr. Maioriello recommended plaintiff undergo lumbar fusion surgery. Plaintiff then sought a second opinion from Dr. Kevin McCarthy, an orthopedic surgeon, who began treating plaintiff on June 25, 2015. Based on his review of plaintiff's medical records and prior tests, Dr. McCarthy also recommended lumbar fusion surgery.

On February 22, 2016, plaintiff had a two-level lumbar fusion surgery at L4-5 and L5-S1 performed by Dr. McCarthy. According to Dr. McCarthy, the typical recovery time for the surgery was twelve to fourteen months. Dr. McCarthy released plaintiff to work in November or December of 2017, with the restriction that he could lift no more than forty to fifty pounds. Dr. McCarthy explained that a patient with a two-level fusion was not someone he would typically recommend returning to an occupation requiring heavy lifting. According to plaintiff, his employer considered work with such a restriction to be light-duty work, which it did not have available. Unable to work as a sandblaster, plaintiff began working as a car salesman, earning less than he had at his former occupation.

3

Plaintiff filed this personal injury suit naming as defendants Officer Norton and his employer, the Baton Rouge Police Department, City/Parish of Baton Rouge. Defendants admitted liability, *i.e.*, that Officer Norton was at fault in causing the accident and that he was acting within the course of scope of his employment at the time. A jury trial was held on the issue of quantum on June 25-27, 2018. The jury returned a verdict awarding plaintiff total damages of $771,000, consisting of: $50,000 for past and future physical pain and suffering; $30,000 for past and future mental anguish and distress; $10,000 for loss of enjoyment of life; $278,000 for past medical expenses; $149,000 for past lost wages; and $254,000 for future lost wages/earning capacity. On July 23, 2018, the trial court signed a judgment awarding plaintiff damages in accordance with the jury's verdict. Defendants filed a motion for judgment notwithstanding the verdict (JNOV) and/or alternatively, motion for new trial, which the trial court denied after a hearing. Plaintiff appealed the judgment, arguing in three assignments of error that the jury awards for past medical expenses, general damages, and future loss wages were abusively low and should be increased. Defendants also appealed, contending the jury awarded plaintiff excessive damages for past and future physical pain and suffering, past medical expenses, and past and future lost wages.[2]

## STANDARD OF REVIEW

In a personal injury suit, the plaintiff bears the burden of proving every element of his case, including the causal connection between an accident and his resulting damages, by a preponderance of the evidence. *Jones v. Bravata*, 18-0837 (La. App. 1st Cir. 5/9/19), 280 So.3d 226, 232, writ denied, 19-01850 (La. 2/26/20), ___ So.3d _____; *Tate v. Kenny*, 14-0265 (La. App. 1st Cir. 12/23/15), 186 So.3d 119, 127. Whether the accident caused the plaintiff's injuries is a

---

[2] Defendants also assigned error to the trial court's denial of their motion for JNOV and/or, in the alternative, motion for new trial. However, we deem this assignment of error to be abandoned since it was not briefed by defendants. See Uniform Rules–Courts of Appeal, Rule 2–12.4(B)(4); *Brown v. Alsco, Inc.*, 16-1670 (La. App. 1st Cir. 6/29/17), 224 So.3d 45, 47 n.l.

4

factual question that should not be reversed on appeal absent manifest error. *Tate*, 186 So.3d at 127.

It is well-settled that a judge or jury is given great discretion in its assessment of quantum for both general and special damages. *Guillory v. Lee*, 09-0075 (La. 6/26/09), 16 So.3d 1104, 1116; *Tate*, 186 So.3d at 127. Louisiana Civil Code article 2324.1 provides that "much discretion" must be left to the judge or jury in the assessment of damages. The jury's assessment of quantum or determination of the appropriate amount of damages is a determination of fact that is entitled to great deference on appeal. On review, an appellate court must be cautious not to re-weigh the evidence or to substitute its own factual finding just because it would have decided the case differently. *Guillory*, 16 So.3d at 1116-17; *Tate*, 186 So.3d at 127.

## PAST MEDICAL EXPENSES

Plaintiff contends the jury award of $278,000 for past medical expenses was abusively low and clearly wrong when plaintiff established he incurred actual medical expenses of $313,140.32. Moreover, plaintiff argues his treating physician, Dr. McCarthy, testified all of the medical treatment plaintiff received was related to plaintiff's June 2012 accident and was reasonable.

In its appeal, defendants argue it was unreasonable for the jury to award plaintiff $278,000 in past medical expenses when he was released to return to work as a sandblaster, a strenuous, physically-demanding job, within eight months of the June 2012 accident. Additionally, defendants point out that, following the June 2012 accident, plaintiff had several other automobile accidents and/or falls that exacerbated his injuries and prolonged his recovery period. Therefore, defendants allege the record does not support a finding that all of the medical expenses plaintiff incurred were related to the June 2012 accident.

5

Ordinarily, a plaintiff may recover reasonable medical expenses he incurs as a result of an injury. Past medical expenses are special damages that are capable of being determined with reasonable mathematical certainty and, as such, they must be proven by the person seeking them by a preponderance of the evidence. The medical evidence must show the existence of the claimed injuries and a causal connection between the injuries and the accident. *Mack v. Wiley*, 07-2344 (La. App. 1st Cir. 5/2/08), 991 So.2d 479, 489, writ denied, 08-1181 (La. 9/19/08), 992 So.2d 932.

When medical expenses have been incurred for the treatment of multiple injuries or conditions, and a jury finds that some, though not all, of those injuries or conditions were caused by the event in question, the jury's great discretion permits it to award something less than the full amount of medical expenses. *Jones*, 280 So.3d at 238. If the victim has proven his medical expenses by a preponderance of the evidence, however, a jury manifestly errs if it fails to award the full amount of the medical expenses proven. The tortfeasor is required to pay for medical treatment of the victim, even over-treatment or unnecessary treatment, unless such treatment was incurred by the victim in bad faith. *Mack*, 991 So.2d at 489.

Pursuant to the verdict form, the jury specifically concluded plaintiff sustained damages as a result of the June 2012 accident. Moreover, the jury obviously rejected defendants' contention that plaintiff suffered only a short-term soft tissue injury of approximately eight months duration. Given the verdict it rendered, the jury clearly concluded the symptoms plaintiff experienced and the necessity for his surgery were caused by the June 2012 accident. This finding is reflected in the fact the jury awarded plaintiff recovery for past medical expenses, past lost wages, and future lost wages for a period far beyond plaintiff's initial return to work after the accident in February 2013. It would have been inconsistent

6

for the jury to allow plaintiff to recover for damages incurred after February 2013 if the jury had concluded the injuries caused by the accident had resolved by that time.

There is a legal presumption that a medical condition resulted from an accident if, before the accident the injured person was in good health, but shortly after the accident the disabling condition manifested itself. *Housley v. Cerise*, 579 So.2d 973, 980 (La. 1991). Further, it is a well-settled that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. When the tortfeasor's conduct aggravates a pre-existing condition, the tortfeasor must compensate the victim for the full extent of the aggravation. *Mack*, 991 So.2d at 491.

In this case, the evidence established plaintiff had no pain in his back prior to the June 2012 accident. While the August 2012 MRI showed plaintiff had some degenerative changes in his lumbar spine, which Dr. McCarthy indicated ninety percent of persons over thirty-five have, plaintiff was asymptomatic prior to the accident. Dr. McCarthy testified that, without the trauma of the accident, plaintiff "likely would have never had such symptoms [pain]," which led to the surgery in this case. Plaintiff began experiencing pain on the evening of the accident and sought medical treatment the following day. Thereafter, he was unable to return to work until February 2013. Even though he returned to work as a sandblaster for three years, he testified he worked with pain and required a helper to assist him in performing his job.

A jury's finding on causation is a factual finding, which cannot be disturbed in the absence of manifest error. *Hart v. Riverside Medical Center*, 01-2428 (La. App. 1st Cir. 11/8/02), 835 So.2d 771, 773. Based on the evidence presented, particularly plaintiff's testimony that his symptoms began shortly after the June 2012 accident and continued until after his surgery, as well as Dr. McCarthy's

7

opinion that the accident caused the condition requiring plaintiff's surgery, we cannot say the jury's conclusion that the June 2012 accident either caused plaintiff's lumbar injuries or caused the degenerative condition in his back to become symptomatic was manifestly erroneous. See *Stobart v. State through Department of Transportation & Development*, 617 So.2d 880, 882 (La. 1993).

Nevertheless, despite the jury's finding of causation, the jury failed to award plaintiff the full amount of medical expenses he incurred. The difference between plaintiff's actual medical expenses and the amount awarded was $35,142.68. Since the jury obviously found plaintiff's lumbar injury was caused by the June 2012 accident, and there was medical evidence that all his other medical treatment was reasonable, it is unclear why the jury declined to award plaintiff the full amount of medical expenses incurred. None of plaintiff's medical bills equal the exact amount excluded by the jury.

At trial, defendants elicited testimony that plaintiff was involved in an automobile accident in July 2016, another automobile accident, and two falls thereafter, which may have prolonged his recovery. However, none of these incidents occurred between the time of the June 2012 accident and plaintiff's February 2016 lumbar fusion surgery. The second automobile accident occurred approximately four months after plaintiff's lumbar surgery, and the other automobile accident and two falls occurred subsequent to that date. Plaintiff testified the July 2016 automobile accident caused his pain to flare up but it resolved within a few months. Moreover, he was still receiving physical therapy after his surgery and was under Dr. McCarthy's post-operative care, and did not seek any additional medical treatment as a result of the July 2016 accident. Dr. McCarthy indicated the accidents subsequent to plaintiff's February 2016 lumbar fusion surgery prolonged his recovery for a "short period of time." Since Dr. McCarthy also testified the typical recovery period for lumbar fusion surgery is

8

twelve to fourteen months, and he released plaintiff to return to work in November or December of 2016, it is clear any delay in plaintiff's recovery was extremely brief. Additionally, plaintiff incurred only a very small portion of his $313,140.32 in medical expenses after the July 2016 motor vehicle accident and the subsequent accident and falls.

Accordingly, the record does not support the jury's refusal to award plaintiff $35,140.32 of his medical expenses. It was clearly wrong for the jury not to award plaintiff the full amount of past medical expenses he incurred in treating the injuries caused by the June 2012 accident since the record establishes all the expenses were necessitated by the June 2012 accident. Therefore, we will amend the award for past medical expenses to allow plaintiff full recovery for all his past medical expenses.

**GENERAL DAMAGES**

Plaintiff argues the jury's $90,000 award for general damages ($50,000 for past and future physical pain and suffering: $30,000 for mental anguish: and $10,000 for loss of enjoyment of life) was abusively low. Plaintiff maintains the jury abused its discretion in view of the severe lumbar pain and injuries he suffered, which required extensive conservative treatment over the course of four and one-half years and eventually two-level fusion surgery.

Conversely, in their appeal, defendants argue the $90,000 general damages award was excessive for a seven-month soft tissue injury. In support of their argument, defendants point out plaintiff originally was released to return to work in February 2013, he continued to work as a sandblaster for the following three years, and there were several gaps where he received no medical treatment other than a few sporadic visits to his chiropractor.

9

General damages may not be fixed with pecuniary exactitude because they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style that cannot be definitely measured in monetary terms. *Kaiser v. Hardin*, 06-2092 (La. 4/11/07), 953 So.2d 802, 808. Vast discretion is accorded the factfinder in fixing general damage awards. Thus, an appellate court should rarely disturb an award of general damages. La. C.C. art. 2324.1; *Kaiser*, 953 So.2d at 809.

The role of the appellate court in reviewing an award of general damages is not to decide what it considers to be an appropriate award. *Kaiser*, 953 So.2d at 809. Reasonable persons frequently disagree about the measure of general damages in a particular case. *Youn v. Maritime Overseas Corporation*, 623 So.2d 1257, 1261 (La. 1993). An appellate court's initial inquiry is whether the factfinder abused its discretion in assessing the amount of damages. Only after a determination that the factfinder has abused its "much discretion" is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Kaiser*, 953 So.2d at 809. Finally, in reviewing a general damage award, an appellate court does not review a particular item in isolation. Instead, the entire damage award is reviewed for an abuse of discretion. *Kelley v. General Insurance Company of America*, 14-0180 (La. App. 1st Cir. 12/23/14), 168 So.3d 528, 546, writs denied, 15-0157, 15-0165 (La. 4/10/15), 163 So.3d 814 & 816.

In the instant case, plaintiff was awarded general damages totaling $90,000, which plaintiff argues is too low and defendants argue is too high. As previously discussed, the jury rejected defendants' contention that plaintiff suffered only a soft-tissue injury of several months duration. This rejection undermines defendants' argument that the total general damage award was excessive. It does not mean, however, that the jury award was necessarily too low.

Plaintiff testified he suffered physical pain beginning from the date of the accident until after his surgery, without any gaps other than for short periods when the steroid injections gave him relief. He also asserts he suffered mental anguish and anxiety, including strain upon his family as a result of his inability to do things he previously did with his children and the financial strain caused by his reduced income. Plaintiff contends the award for general damages should be increased to $350,000, the lowest reasonable amount for his general damages.

Nevertheless, plaintiff was able to work for three years after the accident at a very strenuous occupation. Moreover, in the years between the June 2012 accident and the lumbar fusion surgery in February 2016, there were extended periods during which plaintiff sought no medical treatment other than sporadic visits to his chiropractor. After he was first referred to a surgeon in March 2013, plaintiff waited over seventeen months before consulting with Dr. Maioriello in September 2014. Considering these facts, the jury reasonably could have concluded plaintiff did not suffer constant, severe pain throughout the four-and-one-half-year period referred to by plaintiff. The jury also could have concluded from the fact that plaintiff was able to work as a sandblaster for three years after the accident that his physical activities, including familial activities, may not have been as restricted as he indicated.

After a thorough review of the record, even though we believe the awards for general damages totaling $90,000 may be on the low end of the range of reasonable awards, we cannot say the jury abused its vast discretion in making the awards.

**PAST LOST WAGES**

In their appeal, defendants argue the jury erred in awarding plaintiff $149,000 in past lost wages. Specifically, defendants argue plaintiff was entitled to lost wages only from the date of the June 2012 accident until he first returned to

11

work in February 2013. Using the average weekly earnings figure delineated by plaintiff's expert economist, Dr. Lamar Jones, defendants calculated plaintiff was only entitled to $28,564.48 in lost wages for this period (*i.e.*, $892.64 x 32 weeks).

A plaintiff seeking damages for past lost wages bears the burden of proving lost earnings, as well as the duration of time missed from work due to the accident. The trial court is accorded broad discretion in assessing awards for past lost earnings, but there must be a factual basis in the record for the award. A plaintiff bears the burden of proving his claim for lost earnings. For purposes of determining damages, the amount of lost earnings need not be proved with mathematical certainty, but by such proof as reasonably establishes the claim, and such proof may consist only of the plaintiff's own testimony. An award for past lost wages is subject to the manifest error standard of review because such damages must be proven with reasonable certainty. *Driscoll v. Stucker*, 04-0589 (La. 1/19/05), 893 So.2d 32, 53; *Lemings v. Sanasac*, 16-0052 (La. App. 1st Cir. 12/22/16), 209 So.3d 396, 398-99.

The record herein shows that in addition to the initial period after the accident when plaintiff was unable to work, he missed many days of work due to pain and was totally incapacitated and unable to work for another extended period during his post-surgical recovery. Additionally, after the surgery, he was unable to return to work as a sandblaster due to weight restrictions on the amount he could lift. Consequently, plaintiff began working as an automobile salesman earning less than he had as a sandblaster. Dr. Jones calculated plaintiff's past lost earnings from the date of the accident to trial by comparing the amount plaintiff would have earned working as a sandblaster to the amount plaintiff actually earned during that period, arriving at a figure of $148,648.

Given the facts of this case, we cannot say the jury was clearly wrong or manifestly erroneous in rejecting defendant's contention that plaintiff was only

12

entitled to past lost wages until he returned to work in February 2013. The record contains a factual basis supporting the award to plaintiff for $149,000 in past lost wages.

## FUTURE LOST WAGES/EARNING CAPACITY

Plaintiff contends the jury's award of $254,000 for future lost wages was abusively low in view of the unconverted testimony of Dr. Jones. According to plaintiff, the award should be raised to $415,436, the lowest amount in the range of potential future lost wages testified to by Dr. Jones.

In a related assignment of error in defendants' appeal, defendants assert the award made for future lost wages was excessive and unsupported by the record. Defendants argue it cannot be said that but for the June 2012 accident plaintiff would have been able to continue working as a sandblaster or would not have needed the lumbar fusion surgery.

An award of loss of future income is not based upon the difference between the plaintiff's earnings before and after a disabling injury. Rather, the award is predicated upon the difference between a plaintiff's earning capacity before and after a disabling injury. *Lemings*, 209 So.3d at 399: *Levy v. Bayou Industrial Maintenance Services, Inc.*, 03-0037 (La. App. 1st Cir. 9/26/03), 855 So.2d 968, 973, writs denied, 03-3161, 03-3200 (La. 2/6/04), 865 So.2d 724 & 727. The factfinder's determination of the amount, if any, of an award of damages, including lost earning capacity, is a finding of fact. Such awards are inherently speculative and are intrinsically insusceptible of being calculated with mathematical certainty. Therefore, the factfinder is given much discretion in fixing these awards. See La. C.C. art. 2324.1; *Lemings*, 209 So.3d at 399. Nevertheless, a projection of loss of future earning capacity must have a factual basis in the record, and an award may not be based upon speculation, possibility, or conjecture. *Lemings*, 209 So.3d at 399.

13

In this case, plaintiff was not totally disabled. While unable to work as a sandblaster, he was able to work. Nevertheless, his earnings as a car salesman were less than what he had earned at his former occupation. At trial, Dr. Jones calculated the range of plaintiff's future lost wages to be between $415,436 and $636,177.[3] In calculating this range, Dr. Jones first used the 2017 national average earnings of a sandblaster, $52,442 annually, projected over plaintiff's work life expectancy of 13.3 years, to arrive at $415,436 (after application of appropriate interest and discount rates) as the lowest end of the range. Next, Dr. Jones used the highest average earnings for an experienced sandblaster, which exceeded $69,000 annually, to arrive at a potential loss of future wages in the amount of $636,177.

In weighing expert testimony, a jury may accept or reject the expert's testimony, in whole or in part. The jury may substitute common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole. *Lemings*, 209 So.3d at 399. Even though defendants did not present expert evidence in opposition to Dr. Jones' testimony, a basis existed for the jury to reject Dr. Jones' estimates of plaintiffs' future lost wages.

Specifically, Dr. Jones admitted he used national average earnings of sandblasters rather than plaintiff's actual earnings in calculating the loss of future wages. On cross-examination, he acknowledged the distinction could make "quite a difference" in the overall amount of the award for future lost earnings. Moreover, plaintiff only presented evidence of his partial earnings records from the time of the accident to trial. Dr. Jones admitted he only had incomplete earnings records from plaintiff in making his calculations. It is uncertain how he calculated plaintiff's earning capacity as of the time of trial.

---

[3] Dr. Jones testified the range of plaintiff's past and future lost wages was $564,084 to $784,825. After subtracting his projected past lost wages of $148,648, the range for future lost wages was $415,436 to $636,177.

During trial, plaintiff testified he had earned an average of a little more than $1,000 per week as a sandblaster, depending on how much overtime he worked. He further testified he was earning approximately $750 a week as a car salesman post-surgery. The difference was $250 per week from his prior earnings as a sandblaster. It is difficult to reconcile these figures with Dr. Jones' estimate of plaintiff's future lost earnings over a period of 13.3 years as being between $415,436 and $636,177. Further, the jury heard from plaintiff that there was a possibility he could be hired as a supervisor by his former employer in the future, which would likely increase his earnings.

A jury's determination of the amount of an award of damages for future lost wages is a finding of fact. *Lemings*, 209 So.3d at 399. Considering the record as a whole, we cannot say the jury was clearly wrong or manifestly erroneous in rejecting Dr. Jones' testimony regarding the amount of plaintiff's future lost wages and reaching its own conclusion on this matter. The $249,000 award made by the jury for future lost wages is reasonably supported by the record.

## CONCLUSION

For the reasons assigned, the July 23, 2018 trial court judgment is hereby amended to increase the award made to plaintiff for past medical expenses from $278,000.00 to $313,140.32. The judgment is affirmed in all other respects. Defendants, Frank Norton and the Baton Rouge Police Department, City/Parish of Baton Rouge, are to pay all costs of these appeals, in the amount of $2,491.00.

**AFFIRMED, AS AMENDED.**